DOWNEY BRAND LLP
KEVIN M. SEIBERT (Bar No. 119357)
ANTHONY L. VIGNOLO (Bar No. 203933)
3425 Brookside Road, Suite A
Stockton, CA 95219-1757
Telephone: (209) 473-6450
Facsimile: (209) 473-6455

Attorneys for Claimant

**IN THE MATTER OF THE ARBITRATION BETWEEN**

| | |
|---|---|
| BRUCE COUTURIER,<br><br>Claimant,<br><br>v.<br><br>THE EMPLOYEE OWNERSHIP HOLDING COMPANY, INC.,<br><br>Respondent | **CLAIMANT'S OPPOSITION TO INTERVENOR'S MOTION TO INTERVENE AS NEW PARTY DEFENDANTS**<br><br><br>Arbitrator: Hon. Richard L. Gilbert |

### I. INTRODUCTION

Bruce Couturier ("Bruce Couturier"), Claimaint in the above-entitled arbitration, submits this Opposition to Motion of Gregory Johnson, Edward Rangel, William Rodwell, Kelly Morrell, and Darlene Stanton ("Intervenors") to Intervene as New Party Defendants (the "Motion"). In addition, Bruce Couturier submits this Application To Compel Payment on Order on Couturier's Motion re: Payment Agreement And Hearing Continuance.

The Intervenors' Motion must be denied. California law is clear on two pertinent issues: (1) the determination as to whether a nonsignatory to an arbitration is to be classified as a third party beneficiary, agent, or principle of a signatory, and therefore may otherwise inject itself into an arbitration, is a decision made exclusively by the trial court, not the arbitrator, and (2) a nonsignatory who does not fall within these classifications simply cannot interfere in an arbitration. This is a private contractual arbitration and Intervenors are admittedly not parties to the arbitration agreement. Nor are they third party beneficiaries to such agreement between The

960870.2                                     1

1 Employee Ownership Holding Company ("TEOHC") and Bruce Couturier since there was no
2 express or implied intent to benefit them through such agreement.
3    Intervenors claim that, if they are denied intervention into this arbitration, they will seek
4 an order from the federal court to stay the arbitration. Again, California case law is squarely
5 against Intervenors on this issue as well, and otherwise provides that a nonsignatory to an
6 arbitration agreement has absolutely no standing to stay the arbitration. This not only makes
7 sense, but, given the undisputed fact that this arbitration will have no preclusive effect on
8 Intervenors since they are not parties to the arbitration, their motives for interfering with, or
9 perhaps attempting to stay, this arbitration raises serious questions.
10    Finally, an order should be issued compelling TEOHC to make the previously ordered,
11 and agreed-upon, advancement to Bruce Couturier. TEOHC has no valid reason to withhold the
12 payment since the DOL has not objected to the payment being made. In addition, despite the
13 federal litigation, TEOHC has made payments, and continues to make payments, under Executive
14 Employment Agreements ("EEA's")/Incentive Stock Options ("ISO's") to numerous others who,
15 like Bruce Couturier, had EEA's that were approved by the same board of directors (Eddy,
16 Johanson, and Clair Couturier) and at the same time that Bruce Couturier's EEA's were
17 approved. Neither the other EEA's nor the payments made thereunder have ever been
18 challenged, and there is no reason to now single Bruce Couturier out for unfair treatment.

19                II.   **FACTUAL BACKGROUND**

20    As a Top Gun graduate and officer of the USMC with top secret clearance, Bruce
21 Couturier spent twelve years in the U.S. Marine Corp., went on to serve as a manger for the
22 Computer Sciences Corporation for fifteen years, and then began employment at Noll
23 Manufacturing (the "Company") in 1998 in the position of plant manager. His first Executive
24 Employment Agreement ("EEA") was entered into with the Company approximately five years
25 later, 2003, at or about which time Bruce Couturier was promoted to general manager by the
26 Company's prior CEO/President, Barry Miller. In approximately 2004, Bruce Couturier was
27 ///
28 ///

960870.2                                       2

1  promoted to senior vice-president of the Company, and remained in that position until the
2  Company was sold in April, 2007.
3      The Company had operated at a loss for several years until the early 2000's when annual
4  sales increased more than 60% from approximately $15M to $24M. Sales continued to increase
5  until one year prior to the sale of the Company in 2007, at which time the Company was sold for
6  approximately $60,000,000.
7      Employees who were not executives of the Company, which included the Intervenors,
8  continued to receive employee stock options. The Intervenors, with the exception of Darlene
9  Stanton, left their employment with the Company before the profit rise, and cashed in their stock
10 options based upon the Company's stock value at the time of their departure. Obviously now
11 unhappy with the timing of their departure and the share price that they received for their options
12 based upon the Company's then valuation, Intervenors have since filed their federal lawsuit.
13     The EEA's for the Company's executives, including Bruce Couturier, were revised
14 annually between approximately 2003 - 2005 to provide for greater benefits consistent with the
15 Company's increased profits. The board of directors that approved Bruce Couturier's EEA's
16 consisted of Robert Eddy, David Johanson, and Clair Couturier (who had served on the board
17 since approximately 1995, and was CEO and president beginning in approximately 2001).
18 During the same time period, this same board approved EEA's for other executives of the
19 Company, including Mark Comfort (who was also a senior vice-president) and Dorothy
20 McDaniel (vice-president of operations). Significantly, Mark Comfort received compensation to
21 the tune of nearly $1M for his EEA/ISO in approximately December, 2007, and McDaniel has
22 also received her EEA/ISO payment. All of these EEA/ISO payments were made after the
23 Intervenors filed their federal lawsuit.
24     After a prolonged dispute arose between TEOHC and Bruce Couturier regarding the
25 amount of his EEA/ISO and other benefits, Bruce Couturier instituted these arbitration
26 proceedings against TEOHC. Paragraph S of the "Executive Employment Agreement For Bruce
27 P. Couturier" (the "EEA"), as executed on January 21, 2004, provides for the arbitration of
28 disputes, and states in relevant part:

960870.2                                      3

> Within twenty (20) days after written request for arbitration shall be made by a party on one side to the party on the other, the parties shall jointly select an arbitrator. If the parties are unable to agree upon an arbitrator, an arbitrator shall be appointed as provided in the California Uniform Arbitration Act. The arbitrator shall hear and decide the dispute, adhering to the California Uniform Arbitration Act. The hearing on the dispute shall be held no later than sixty (60) days after the request for appointment of an arbitrator.[1]

Intervenors are plaintiffs in a federal lawsuit filed against Robert Eddy, David Johanson, and Clair Couturier (Bruce Couturier's brother) in the United States District Court for the Eastern District of California, Case No. 2:05 –CV-02046-RRB-KJM, alleging that Defendants engaged in a scheme to defraud the Noll Manufacturing Company shareholders and the participants of employees' pension plan by arranging for grossly disproportionate compensation to Defendant Clair Couturier and others. Bruce Couturier was not named as a defendant in that federal lawsuit, nor were any of the other Company executives.

In their Motion, the Intervenors challenge Bruce Couturier's EEA and assert as their basis for intervening:

> In fact, the Indemnification Agreements and Release Agreements for Clair Couturier, David Johanson, and Robert Eddy with respect to their wrongdoing were all executed by Bruce Couturier after his appointment to the TEOHC Board of Directors. As consideration for Bruce Couturier's execution of the Indemnification Agreements and Release Agreements for his brother Clair, David Johanson, and Robert Eddy, they executed the same day an Indemnification Agreement and Release Agreement in his favor and rewarded him with stock options (7%) of the company and an Executive Employment Agreement through June 2011. (*Motion*, 3:1-9.)

This is a gross distortion on several levels. First, Clair Couturier and David Johanson had been approved for indemnification by the Company for a separate lawsuit at the March 5, 2005, Board meeting, prior to Bruce Couturier even joining the Board and, during this same meeting, Comfort, McDaniel, and Bruce Couturier were granted stock options, all as reflected in the minutes for that meeting. Second, Comfort and Bruce Couturier already had EEA's with ISO's as

---

[1] Couturier's demand for arbitration is expressly based upon his January, 2004, EEA. He had not received an executed version of his purported 2005 EEA from TEOHC until after this arbitration was initiated.

960870.2    4

early as 2003.[2] In short, there is absolutely no evidence that Bruce Couturier received anything to which he was not otherwise entitled in exchange for approving the Indemnification Agreements when he became a member of the Board in 2005. In fact, the terms of Bruce Couturier's 2005 EEA/ISO was no more favorable to him than the terms of his prior EEA's/ISO's.

Intervenors point out that they recently obtained a preliminary injunction from the federal court enjoining the Defendants in the federal action from taking advances from TEOHC for their legal fees and costs incurred in the federal action. Apparently, in a separate arbitration proceeding before the American Arbitration Association, the arbitrator adjudicated the validity of the indemnity agreement and ruled that Eddy and Johanson were entitled to the advancement of legal fees and costs for the federal litigation pursuant to that agreement. The preliminary injunction, however, was obtained by Defendants before the arbitration award was confirmed.

Although the federal action involves completely separate and distinct factual and legal issues, and although Intervenors did not name Bruce Couturier as a party in that lawsuit, and despite the fact that Intervenors did not attempt to interfere with any other recent ISO payments to Bruce Couturier's counter-parts (Comfort and McDaniel), Intervenors now attempt to use that lawsuit as a basis to interfere with this arbitration. In their Motion, the Intervenors assert that, in the federal action, Judge Beistline "made specific findings, including the following: . . . (3) A preliminary injunction staying or enjoining the arbitration would not violate the Anti-Injunction Act, 28 U.S.C § 2283. (Exhibit B, pp. 17-18)." (*Motion*, 3:20 – 4:10.) In fact, no such finding was made. Judge Beistline's Ruling specifically states:

> To answer another of the Defendants' objections, this Preliminary Injunction [enjoining TEOHC from advancing legal fees to Defendants and enjoining the filing of a state court action to confirm the arbitration award] does not violate the Anti-Injunction Act, 28 U.S.C § 2283. The Act prohibits a federal court from granting an injunction to 'stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.' Simply put, there is no state court proceeding as yet, and therefore no stay has been issued. The court has enjoined the several

---

[2] Couturier had an April 8, 2003 EEA and ISO agreement for 6,000 shares with a $47 option price per share and a January 21, 2004, EEA and ISO depicting 7,075.94 shares.

960870.2                                    5

defendants from initiating a state court proceeding, but that is hardly the same thing. (*Ruling,* 17.)

There was absolutely no mention by Judge Beistline as to whether the federal court would have stayed the other arbitration involving Defendants Johanson and Eddy, even if the arbitration award had not already been issued. Judge Beistline then considered what preclusive effect, if any, the decision of the arbitrator as to the indemnity and advancement of fees would have on the court as to the proposed injunction, and reasoned:

> In the present case, the Plaintiffs did not sign the indemnification agreements, and they could not be bound by TEOHC when TEOHC signed the agreements. Plaintiffs obviously have not sought the benefit of the indemnification agreements. In fact, they ask this Court to invalidate them. They therefore are not bound by the arbitration clause contained therein, and the arbitrator's decision has no preclusive effect on them. (*Id.*, 16.)

In short, Judge Beistline did not stay the arbitration and made it clear that the arbitration award would not affect any rights the Intervenors may have to challenge that award. Consistent with the reasoning of Judge Beistline, if there is no preclusive effect resulting from the private arbitration in which Intervenors were not parties, then there is obviously no reason for Intervenors to interfere in this private arbitration. In their Motion, Intervenors assert:

> In light of Judge Beistline's decision, Intervenors could seek to enjoin the pending arbitration or seek to intervene in this arbitration to protect the rights of Intervenors and ESOP. . . . Absent an order granting intervention, Intervenors would have no alternative but to petition Judge Beistline for a preliminary injunction to stay the pending arbitration. (*Motion*, 4:11 – 17.)

In fact, Intervenors have no right to do either, and their Motion should be denied because there is simply no legal basis for them to intervene.

### III. LEGAL ARGUMENT

**A. There Is No Legal Basis Upon Which To Allow The Intervenors To Intervene In This Arbitration.**

The arbitration provision in Bruce Couturier's 2004 EEA provides that "the arbitrator shall hear and decide the dispute, adhering to the California Uniform Arbitration Act." The California Uniform Arbitration Act does not provide an arbitrator with any authority to allow nonsignatories to an arbitration agreement to intervene in an arbitration. Rather, the decision as

960870.2         6

to whether a nonsignatory is an agent, principle, or third party beneficiary, that would be entitled to the rights and obligations of the arbitration agreement, rests exclusively with the trial court. In addition, even if the Arbitrator could make such a decision in this case, the Intervenors are not, as they contend, third party beneficiaries to the employment agreement between TEOHC and Bruce Couturier, and would therefore have no right to interfere in this arbitration.

### 1. The Court Has Sole And Exclusive Jurisdiction To Determine Whether Intervenors May Intervene.

An arbitrator has no power to determine rights and obligations of one who is not a party to the arbitration agreement. Therefore, a trial court must first determine the status of a person who demands arbitration under a contract that he or she did not sign (or against whom arbitration is sought to be enforced). *American Builder's Ass'n v. Au-Yang* (1990) 226 Cal.App.3d 170, 179.

In *American Builder's Ass'n*, which stemmed from an arbitration proceeding resulting from a construction contract dispute between a builder and purported owners of property, the arbitrator made a factual finding that the purported owners had signed the contract as agents for the true owner, who was not a party to the contract, and ordered the owners to join the true owner as a co-claimant in the arbitration proceeding. The builder applied to the trial court for a preliminary injunction seeking to enjoin the conducting of an arbitration with the true owner as a party. The trial court denied the preliminary injunction on the ground that the builder failed to show that the arbitrator had no jurisdiction to determine whether the arbitration agreement between the builder and purported owners was signed by the purported owners as principals or as agents for the true owners, and that the "all claims" language in the arbitration clause could have been sufficient to bind the builder to the arbitration as to any willing claimants.

The Court of Appeal reversed and remanded for the builder to file an amended complaint setting forth a cause of action for declaratory relief as to the true owner's status. The Court of Appeal held that the trial court erred in holding the arbitrator had jurisdiction to determine the nonsignatory's status, and whether the nonsignatory was an undisclosed principal so as to be properly joined in the arbitration was a question of fact for the trial court in the first instance:

> Therefore, notwithstanding an arbitrator's broad authority to resolve questions presented by a controversy, an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement. (*Unimart, supra,* 1 Cal.App.3d at p. 1045.) The question of whether a nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance. *Id.* at 179.

In the more recent case of *Smith v. Microskills San Diego L.P.* (2007) 153 Cal.App.4th 892, a student filed a first amended complaint against a vocational school he attended, alleging that the school had violated disclosure provisions of the Education Code governing vocational institutions. If established, the violations would entitle students to refunds and civil penalties. The student had paid for a portion of his tuition by borrowing funds from an independent educational lender. The promissory note the student executed in favor of the lender contained an arbitration provision. The school moved to arbitrate the student's claims, claiming it was a third party beneficiary of the arbitration provisions of the note. The trial court denied the school's motion, and the Court of Appeal affirmed, reasoning:

> The arbitration clause in the Sallie Mae note provides that it covers any dispute relating to 'the validity, enforceability or scope of this Arbitration Provision.' Microskills argues that in light of this provision its standing to demand arbitration should have been decided in the first instance by an arbitrator. We disagree. '**The determination of standing to arbitrate as a party to the contractual arbitration agreement is a question of law for the trial court in the first instance.** [Citation.]' (*City of Hope v. Bryan Cave, L.L.P.* (2002) 102 Cal.App.4th 1356, 1369; see also *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 171). *Id.* at 900. [Emphasis added].

Likewise, Intervenors' attempt to intervene in this arbitration and otherwise assert rights pursuant to the contractual arbitration agreement between TEOHC and Bruce Couturier, to which they are not parties, is an issue that can only be decided by a trial court.

### 2. Even If The Arbitrator Could Decide Whether Intervenors Have The Right To Intervene, There Is No Legal Basis Upon Which To Allow Them To Do So.

Intervenors assert that they are "necessary parties to this arbitration if the Arbitrator is to render a final and binding decision." (*Motion,* 4:18-19). Again, this is a gross distortion. Even if Intervenors were allowed to join in this arbitration, the decision would not be "final and binding" unless all ESOP participants were joined in this arbitration, which they are not. In fact, all of the

960870.2                                   8

Intervenors, with the exception of Darlene Stanton, have already cashed out their employee stock options. Stanton continues to own approximately 2.2% of the stock in the ESOP. The Arbitrator's decision in this arbitration will not be binding as to the numerous other employees who own the remaining 97.8% of the stock in the ESOP and who are also not parties to this arbitration.

Intervenors also assert that they "are surely third party beneficiaries to the alleged contracts at issue . . . ." (*Motion*, 4:19 – 23.) Again, Intervenors are mistaken on several levels. The arbitration provision at issue provides in relevant part: "If any controversy or claim arising out of this Agreement cannot be settled by the Parties or through mediation, the controversy or claim shall be settled by arbitration." The agreement defines the "Parties" as TEOHC and Bruce Couturier, and does not open the arbitration provision up to third parties. The Intervenors are not TEOHC, and even Judge Beistline's Ruling acknowledges this fact:

> In the present case, the Plaintiffs did not sign the indemnification agreements, and they could not be bound by TEOHC when TEOHC signed the agreements. Plaintiffs obviously have not sought the benefit of the indemnification agreements. In fact, they ask this Court to invalidate them. They therefore are not bound by the arbitration clause contained therein, and the arbitrator's decision has no preclusive effect on them. (*Ruling*, 16.)

In *Smith, supra*, the Court of Appeal addressed this exact issue, and explained application of the third party beneficiary rule:

> Largely for the same reasons, Microskills cannot establish that it is a third party beneficiary of the Sallie Mae notes. *Civil Code section 1559* provides '[a] contract, made expressly for the benefit of a third person, may be enforced by him [or her] at any time before the parties thereto rescind it.' 'The contract need not be *exclusively* for the benefit of the third party, i.e., he or she need not be the sole or the primary beneficiary.' (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 699, p. 786.) 'Insofar as intent to benefit a third person is important in determining his [or her] right to bring an action under a contract, it is sufficient that the promisor must have understood that the promisee had such intent.' (*Lucas v. Hamm* (1961) 56 Cal.2d 583, 591.) The term 'expressly' in *Civil Code section 1559*, however, means 'in an express manner; in direct or unmistakable terms; explicitly; definitely; directly.' (*City & County of San Francisco v. Western Air Lines, Inc.* (1962) 204 Cal.App.2d 105, 120; *Shell v. Schmidt* (1954) 126 Cal.App.2d 279, 290.) *Id.* at 898.

960870.2

9

1    Here, the EEA was not "made expressly [in direct or unmistakable terms] for the benefit"
2    of Intervenors. In fact, except for conclusively stating that they are "surely third party
3    beneficiaries," Intervenors offer no explanation whatsoever as to how such an interpretation is
4    even possible.

**B.   Intervenors Will Have No Right To Stay This Private Arbitration.**

While Intervenors contend that they will seek a stay of this private arbitration from the federal court, California law clearly does not authorize any such stay when it is requested by a nonsignatory. Rather, only a party to an arbitration agreement is allowed to interfere in, and otherwise request a stay of, the arbitration process. *One World Networks Integrated Technologies, Inc. v. Duitch* (2002) 103 Cal.App.4th 1038, 1044.

In *One World*, an executive (Duitch), who left her job at One World to work for a competing firm (Buckhead), was sued by One World for breach of contract, and she and Buckhead were sued on various unfair competition theories. Duitch, in turn, initiated an arbitration to resolve a salary dispute with One World, and One World counterclaimed against Duitch in the arbitration proceedings.

After the arbitrator ruled that One World's counterclaims were covered by the arbitration agreement executed by Duitch and One World, One World dismissed Duitch from the lawsuit. Buckhead then asked the trial court to stay the arbitration of One World's counterclaims against Duitch, pointing out the potential of conflicting rulings between the lawsuit and the arbitration. The trial court granted Buckhead's request and One World appealed, contending a stay may be sought only by a party to the arbitration agreement, and that Buckhead lacked standing to intrude into the arbitration process. The Court of Appeal agreed with One World and reversed, reasoning in part that, pursuant to California Code of Civil Procedure § 1280, "Buckhead is not a 'party to the arbitration,' . . . and there simply is no law to support Buckhead's efforts to inject itself into the arbitration proceedings." *Id.* at 1042. The Court of Appeal continued:

> By its plain language, the stay provisions of *section 1281.2* may be invoked only by a petition 'of a party to an arbitration agreement.' This language is neither vague nor ambiguous, and it makes perfectly good sense--because no one other than a party to the arbitration agreement ought to be allowed to interfere with the

960870.2

10

> arbitration process. The obvious purpose of the stay provision in *section 1281.2* is to protect someone in the position that Duitch was in before she was dismissed from this lawsuit--in which event *section 1281.2* would have given her the right (as a party to the arbitration agreement who was also a party to this pending action) to ask the trial court either to stay this action pending the resolution of One World's counterclaims in the arbitration, or to stay the arbitration of One World's counterclaims pending the outcome of this action, whichever served her purpose. (§ *1281.2*; *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 342-343.) *Id.* at 1044.

"To avoid this conclusion," Buckhead argued that it did have standing because One World's claims against Buckhead "arise from actions allegedly taken by Ms. Duitch after she left One World's employ" and because "[t]hese are the same actions which form the basis for the [c]ounterclaims in the [a]rbitration." Therefore, according to Buckhead, "any rulings by the [a]rbitrator regarding Ms. Duitch's actions will necessarily prejudice the rights of the remaining [d]efendants in this case." In response to this argument, the Court of Appeal stated:

> Buckhead is wrong. Since Buckhead is not a party to the arbitration, and since it does not claim to be in privity with Duitch, the arbitrator's award will not have any res judicata or collateral estoppel effect with regard to One World's claims against Buckhead. (*Vandenberg v. Superior Court, supra,* 21 Cal.4th at p. 832.) (*Id.* at 1042-1043.)

The reasoning from *One World* applies equally here. Intervenors are not a party to the arbitration, and therefore will not have standing in federal court to obtain a stay of the arbitration.

**C.     The Arbitrator's Prior Order on Bruce Couturier's Motion re: Payment Agreement And Hearing Continuance Should Be Enforced As An Interim Award.**

Arbitrators have power to make interim awards and orders where necessary to safeguard the subject matter or effectuate the proceedings. For example, if the respondent attempts to stall the arbitration by refusing to pay its share of the arbitrator's fees, the claimant may ask the arbitrator for an order directing the respondent to pay; and then, if necessary, ask a court to enforce that order. (*Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.* (9th Cir. 1991) 935 F2d 1019, 1023—arbitrator's order requiring payment into escrow account was enforceable by district court even though no final award had been made.)

11

1  Interim orders may also be used to effectuate an interim payment. When the arbitrator is
2  "even arguably construing or applying the contract," the interim award will be upheld. (*Certain*
3  *Underwriters at Lloyd's London v. Argonaut Ins. Co.* (ND CA 2003) 264 F.Supp.2d 926, 937–
4  939 (emphasis added) - arbitrators' interim award requiring reinsurer to pay insurer $2.5 million
5  to cover legal fees incurred in underlying coverage dispute enforceable.)

6  Likewise, if parties to an arbitration dispute only a portion of the amount owed, the
7  claimant to the undisputed amount may ask the arbitrator for a prehearing partial award. This
8  award is immediately confirmable and enforceable by the court even though no final award has
9  been made. (*Home Ins. Co. v. RHA/Pennsylvania Nursing Homes, Inc.* (SD NY 2001) 127
10 F.Supp.2d 482, 487–488 - interim award of undisputed insurance premiums immediately
11 confirmable and enforceable.)

12 Pursuant to the Arbitrator's Order on Couturier's Motion re: Payment Agreement And
13 Hearing Continuance ("Order"), TEOHC's payment of $346,500.00 was due to Bruce Couturier
14 on October 9, 2008. The advancement has not been received by Bruce Couturier, and in fact
15 TEOHC addresses this issue in its opposition to the Motion and states that "TEOHC will refrain
16 from making the advancement that is the subject of the Arbitrator's Order based on the *Johnson*
17 Order and the DOL's letter pertaining to such advancement." (*TEOHC's Response to Motion*,
18 2:18-20). As discussed below, neither of these contentions provides grounds to avoid the
19 advancement and, therefore, based upon the foregoing legal authorities, Bruce Couturier requests
20 an Interim Award in the sum of $346,500 that can be confirmed by a judicial authority.

21 **1.  The DOL Did Not Object To The Advancement.**

22 Pursuant to the Order, TEOHC was ordered to serve a copy of the Order on the DOL.
23 Service of the Order was in fact made on the DOL by TEOHC on September 19, 2008, via
24 electronic mail and Federal Express. At the hearing prior to issuance of the Order, TEOHC
25 sought to avoid the agreed-upon payment to Bruce Couturier based upon TEOHC's newly
26 discovered "fear" that such payment may result in ERISA violations. The Order addressed
27 TEOHC's concern as follows: "Here, TEOHC 'fears' DOL will view the payment as violating
28 ERISA, but that fear does not constitute adequate ground to avoid application of the doctrine of

960870.2                                    12

equitable estoppel to avoid prejudice to Mr. Couturier here. Accordingly, the Arbitrator concludes that TEOHC must make the payment unless there is proof of more than just that fear." Accordingly, the Order provided: "TEOHC is ordered to make payment of $346,500.00 to Couturier within 20 days of such service, unless it receives some further directive or order from DOL prohibiting such payment."

By letter dated September 24, 2008, DOL attorney Michael Schloss responded and essentially took the position that, since the DOL is not a party to the arbitration proceeding, the DOL neither consents nor objects to the Order or the payment to Bruce Couturier. Specifically, in his response, Mr. Schloss states that "we do not assent to the transfer of the money or agree to limit any action that we may take in the future based on that transfer" and he advises that TEOHC "may wish to consider whether effectuating the contemplated payment to Mr. Couturier . . . would be a fiduciary act subject to the fiduciary responsibility provisions of ERISA § 404(a) or the prohibited transaction provisions of ERISA § 406."

The correspondence of Mr. Schloss offers nothing new than was previously argued by TEOHC at the hearing, and otherwise does not in any way set forth any "directive or order from DOL prohibiting" the payment to Bruce Couturier. As set forth by the Order, TEOHC's "fear" that the payment may violate ERISA "does not constitute adequate ground to avoid application of the doctrine of equitable estoppel to avoid prejudice to Mr. Couturier." Here, without any proof that the payment to Bruce Couturier would indeed result in an actionable ERISA violation, TEOHC should have considered its "fear" of any potential violation prior to making its agreement with Bruce Couturier in exchange for the continuance. This, in turn, leads to the second point.

2. **The *Johnson* Order Does Not Prohibit Payment To Bruce Couturier, Nor Does It Prohibit Any EEA/ISO Payments Whatsoever.**

Since the failure to resolve a prolonged dispute forced Bruce Couturier to file this arbitration, it has been clear that TEOHC has intentionally attempted to delay making payment of the benefits to which Bruce Couturier is entitled under his EEA/ISO. TEOHC agreed to the advancement to Bruce Couturier in exchange for a continuance of the hearing, obviously knowing of the issues pending in the federal litigation, and then retracted its agreement based upon "fear"

960870.2

13

that such advancement may constitute an ERISA violation. However, since the DOL has not objected to the advancement, TEOHC now hangs it hat on the *Johnson* Order.

The *Johnson* Order speaks for itself. It prohibits the Defendants in the federal litigation from receiving an advancement of their legal fees and costs from TEOHC. It does not in any way address the payment of benefits under the EEA/ISO, let alone benefits under the EEA/ISO of those who are not parties to the federal action, nor does it even mention Bruce Couturier's name. As mentioned above, all other Company executives with EEA/ISO, including Bruce Couturier's counterparts (Comfort and McDaniel) whose EEA's/ISO's were approved at the same time as Bruce Couturier's, have and continue to be paid on their EEA's/ISO's. If Intervenors or TEOHC desired to avoid or prevent such payments from being made, they have been free to attempt to seek a preliminary injunction from the federal court. For whatever reason, they have not done so, and now TEOCH attempts to use the inapplicable *Johnson* Order as yet another basis to justify its refusal to make the payment to, and to otherwise single out, Bruce Couturier.

## IV. CONCLUSION

Bruce Couturier respectfully requests that the Intervenors' Motion be denied on the basis that (1) the determination as to whether a nonsignatory to an arbitration is to be classified as a third party beneficiary, agent, or principle of a signatory, and therefore may otherwise inject itself into an arbitration, is a decision made exclusively by the trial court, not the arbitrator, and (2) a nonsignatory who does not fall within these classifications simply cannot interfere in an arbitration. This is a private contractual arbitration and Intervenors are admittedly not parties to the arbitration agreement. Nor are they third party beneficiaries to such agreement between TEOHC and Bruce Couturier since there was no express or implied intent to benefit them through such agreement.

Finally, Bruce Couturier respectfully requests an order compelling TEOHC to make the previously ordered, and agreed-upon, advancement to Bruce Couturier, especially considering that TEOHC has no valid reason to withhold the payment. The DOL has not objected to the payment being made, and the *Johnson* Order does not prohibit such payment from being made.

///

1  In fact, EEA/ISO payments have been made, and continue to be made, to numerous others who,
2  like Bruce Couturier, had EEA's/ISO's that were approved by the same board of directors and at
3  the same time that Bruce Couturier's EEA's/ISO's were approved.

DATED: October 31, 2008          DOWNEY BRAND LLP

By: /s/ Anthony L. Vignolo
ANTHONY L. VIGNOLO
Attorney for Claimant

DOWNEY BRAND LLP

960870.2

15

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Downey Brand LLP, 3425 Brookside Road, Suite A, Stockton, California, 95219. On October 31, 2008, I served the within document:

**CLAIMANT'S OPPOSITION TO INTERVENOR'S MOTION TO INTERVENE AS NEW PARTY DEFENDANTS**

| | |
|---|---|
| ☒ | **BY FAX:** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m. |
| ☐ | **BY HAND:** by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below. |
| ☐ | **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California addressed as set forth below. |
| ☐ | **BY OVERNIGHT MAIL:** by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day. |
| ☐ | **BY PERSONAL DELIVERY:** by causing personal delivery by _____ of the document(s) listed above to the person(s) at the address(es) set forth below. |

Richard L. Gilbert
2630 J Street
Sacramento, CA 95816
(916) 442-7046 (fax)

Cynthia Joy Larsen
ORRICK, HERRINGTON, et al.
400 Capitol Mall, Suite 3000
Sacramento, CA 95814-4497
(916) 329-4900 (fax)

Terence J. Devine
DEVINE, MARKOVITS & SNYDER, LLP
52 Corporate Circle, Suite 207
Albany, NY 12203
(518) 464-0200 (fax)

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

DOWNEY BRAND LLP

PROOF OF SERVICE

2     Executed on October 31, 2008, at Stockton, California.

_____
SUSAN LONDON