1
2
3
4
5
6
7

## IN THE MATTER OF THE ARBITRATION BETWEEN

8

9  Bruce Couturier,

10              Claimant,

11       v.

12  The Employee Ownership Holding
    Company, Inc.,

13              Respondent.

14

**THE EMPLOYEE OWNERSHIP
HOLDING COMPANY, INC.'S
MOTION FOR TEMPORARY STAY**

Arbitrator:  Hon. Richard L. Gilbert

15  **I.     INTRODUCTION**

16            The Employee Ownership Holding Company, Inc. ("TEOHC") hereby moves for a

17  temporary stay of the arbitration proceedings on the ground that the *Johnson* Plaintiff Intervenors

18  ("Intervenors") have advised counsel for TEOHC that they will be filing a complaint in United

19  States District Court for the Eastern District of California by Monday, November 24, 2008

20  against Bruce Couturier and will be seeking a stay of this arbitration or, alternatively, an order

21  permitting their participation herein.  A temporary stay while the District Court rules on

22  Intervenors' motion would allow the Intervenors to receive a ruling as to whether they would be

23  able to participate in the arbitration before the arbitration occurs.  Such a stay would prevent the

24  parties from incurring unnecessary costs of preparing for and participating in an arbitration that

25  may be subsequently stayed or ultimately disregarded.  The arbitration hearing is presently set for

26  December 1, 2008.

27            At the telephonic hearing held in this matter on Monday, November 17, 2008,

28  Counsel for TEOHC orally reiterated its request for such a stay and the Arbitrator requested that

OHS West:260553810.2

the parties confer regarding it.  The parties have conferred and no agreement was reached with respect to such a stay.  Accordingly, TEOHC makes this formal motion for a stay.

## II.     ARGUMENT

TEOHC seeks a stay in the interests of fairness and litigation economy.  Such a stay is within the power of the arbitrator.  *See* Cal. Code of Civ. Proc. § 1282.2.  The current scheduling of the arbitration hearing will result in needless expense in the event the Arbitration is stayed by the District Court or if it determines that Intervenors must be permitted to participate in this arbitration.  The Intervenors submitted their request to intervene to the Arbitrator on or about October 6, 2008.  The application was ruled upon on November 17, 2008, leaving less than nine court days for the Intervenors to obtain from the District Court the stay or other relief suggested in the Arbitrator's Order prior to the December 1, 2008 Arbitration hearing.  On November 17, 2008, the Arbitrator denied the Intervenor's Application to Intervene stating that he lacked jurisdiction to determine whether non-signatories to an arbitration agreement may be accorded party status.  *See* Arbitrator's November 19, 2008 Order at 2:14, 3:11-16.  The Arbitrator indicated that the Intervenors "still have recourse to the Federal Court." *Id.* 3:21-22.  However, such recourse would be nullified if this arbitration was to proceed to hearing before such a ruling could be obtained.  Holding an arbitration hearing before such ruling could be obtained would likely subject this arbitration proceeding to further attack.

While TEOHC desires a prompt resolution of this arbitration, it does not wish to sacrifice fairness or to be placed in a position where it must litigate the controversy twice:  once in arbitration and once before the federal court.  With a stay, the parties and the Arbitrator will avoid potentially duplicative, time consuming and expensive proceedings as well as the apparent likelihood that any result obtained in this Arbitration in the absence of Intervenors will be ignored by the District Court under the rationale enunciated in the order entered in the *Johnson* case with respect to a prior arbitration.[1]  TEOHC understands that Intervenors' complaint against Bruce Couturier will claim that TEOHC is not obligated to compensate him under the executive

---

[1] In granting a preliminary injunction against enforcement of an arbitration award, the District Court in *Johnson* cited the fact that plaintiffs were not allowed to participate.

OHS West:260553810.2                              - 2 -

1    employment agreements, in light of Intervenors' position that the TEOHC former directors

2    breached fiduciary duties and ERISA obligations.

3            Not only will the soon-to-be-instituted complaint against Bruce Couturier present

4    the possibility of duplicative and inconsistent rulings with this arbitration, but such a possibility

5    of inconsistent rulings is presented by two other actions.  Both the pending amended complaint,

6    previously filed herein, *Johnson* case and the recently filed Department of Labor litigation, which

7    assert certain related transactions, also present a possibility of conflicting rulings on common

8    issues of law or fact.[2]  Cal. Code of Civ. Proc. § 1281.2(c).

9            Intervenors have asserted in the *Johnson* case that TEOHC former director and

10   officer Clair Couturier, among others, breached his fiduciary duties to TEOHC.  Intervenors

11   assert that Clair Couturier improperly procured indemnification agreements from TEOHC and

12   that Bruce Couturier participated in such procurement.  Intervenors will assert in their complaint

13   against Bruce Couturier that he received his employment arrangement in return for approving the

14   indemnification agreements and other benefits for Clair Couturier.  Intervenors seek resolution of

15   issues common to both actions, which have an impact on the assets of TEOHC, which

16   Intervenors, the Department of Labor, TEOHC and the TEOHC ESOP all wish to preserve for the

17   benefit of the TEOHC ESOP participants.  The District Court has issued two preliminary

18   injunctions, first enjoining the TEOHC former directors from receiving advancement of defense

19   costs under indemnification agreements and enjoining confirmation of an arbitration pertaining

20   thereto, and second, granting a constructive trust on all of Clair Couturier's assets.

21           In addition, the United States Department of Labor's suit alleges that the TEOHC

22   executive management violated their fiduciary duties and allocated to themselves an unfair

23   amount of TEOHC's funds, which they believe should be preserved for the beneficiaries of the

24   TEOHC Employee Stock Ownership Plan, i.e., TEOHC former employees.  Intervenors will

25   assert that TEOHC management used the Bruce Couturier employment agreement to procure

26   such benefits.

27   _____

28   [2] The Department of Labor filed its lawsuit on November 13, 2008 in the United States District Court for the Eastern District of California.  A true and correct copy of the lawsuit is attached hereto as Exhibit A.

1           These three lawsuits presenting common issues raise the possibility of rulings

2    inconsistent with this arbitration, implicating the principles underlying Section 1281.2(c), which

3    permits a court to decline to enforce an agreement to arbitrate in the face of related litigation

4    presenting the possibility of inconsistent rulings.  Given these unique circumstances, and the

5    existing accusations of impropriety, it is in the interests of all that a temporary stay be granted to

6    permit the federal court to rule upon the question of whether Intervenors must be permitted to

7    participate.

8    **III.**    **CONCLUSION**

9           TEOHC respectfully requests an immediate temporary stay pending the outcome

10   of the District Court's ruling concerning the propriety of the inclusion of third parties in this

11   arbitration.  TEOHC respectfully requests an immediate ruling on its motion for a stay.

12

13   Dated:    November 20, 2008      ORRICK, HERRINGTON & SUTCLIFFE LLP

14

15   _____

16                           Cynthia J. Larsen
                         Attorneys for Respondent
     The Employee Ownership Holding Company, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

1  MICHAEL SCHLOSS, CA Bar No. 134124
   MEGAN E. GUENTHER
2  ROBYN M. SWANSON
   U.S. Dept. of Labor, Office of the Solicitor
3  Plan Benefits Security Division
   P.O. Box 1914
4  Washington, D.C.  20013
   202-693-5603
5  202-693-5610 (FAX)
6  Email:  schloss.michael@dol.gov
7
   DANIELLE L. JABERG, CA Bar No. 256653
8  U.S. Dept. of Labor, Office of the Solicitor
9  90 7th Street, Suite 3-700
   San Francisco, CA  94103
10 415-625-7750
   415-625-7772 (FAX)
11 Email:  jaberg.danielle@dol.gov
12
   Attorneys for Plaintiff, Secretary of the United States Department of Labor
13
14              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF CALIFORNIA
15                  SACRAMENTO DIVISION
16 ELAINE L. CHAO, Secretary of the United
17 States Department of Labor,
18                  Plaintiff,
19        v.
20 CLAIR R. COUTURIER, JR.; DAVID R.          Civil Action No._____
21 JOHANSON; JOHANSON BERENSON
   L.L.P.; ROBERT E. EDDY; JAMES
22 ROORDA; MATTHEW DONNELLY;
   BUSINESS APPRAISAL INSTITUTE;
23 DAVID L. HEALD; CONSULTING
24 FIDUCIARIES, INC.; THE EMPLOYEE
   OWNERSHIP HOLDING CORPORATION;
25 and THE EMPLOYEE OWNERSHIP
26 HOLDING CORPORATION EMPLOYEE
   STOCK OWNERSHIP PLAN.
27
28                  Defendants.

                              1
SECRETARY'S COMPLAINT
Civil Action No. _____

## COMPLAINT FOR ERISA VIOLATIONS

Elaine L. Chao, Secretary of the United States Department of Labor ("the Secretary"), alleges:

1.    The Secretary is charged with enforcing the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1191c. One of ERISA's goals is to ensure "the soundness and stability of plans with respect to adequate funds to pay promised benefits." ERISA § 2(a), 29 U.S.C. § 1001(a).  To protect plan investments, ERISA requires that those who manage the investments act solely, exclusively and prudently in the interests of plan participants.  ERISA §§ 404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B).  In addition, ERISA requires plan fiduciaries to comply with the terms of plan documents when to do so does not otherwise violate ERISA.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

2.    Title I of ERISA also creates per se prohibitions barring conflict of interest transactions between a plan and a party in interest.  ERISA §§ 406-408, 29 U.S.C. §§ 1106-1108. Congress concluded that certain transactions present such a grave opportunity for abuse that, except in narrowly-defined circumstances, they should be prohibited.  Thus ERISA prohibits a fiduciary from dealing with the assets of a plan in his own interest or for his own account. ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).  ERISA also prohibits a fiduciary from receiving any consideration for his own personal account from any party dealing with a plan in connection with a transaction involving the assets of the plan.  ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

3.    When ERISA's strict fiduciary standards are not met, the Secretary has the authority to seek relief under ERISA §§ 409(a) and 502(a)(2) & (5), 29 U.S.C. §§ 1109(a) and 1132(a)(2) & (5), to restore plan losses, to recover unjust profits and to obtain other remedial and

2

SECRETARY'S COMPLAINT
Civil Action No. _____

equitable relief as the court may deem appropriate.  The Secretary may also seek injunctions to prevent those who have violated their fiduciary duties from managing or providing services to employee benefit plans in the future.

4.     Not only may fiduciaries be held directly responsible for losses and other relief for their own misconduct, but their co-fiduciaries may also be held liable for losses and other relief when those co-fiduciaries participate in, enable or fail to remedy another fiduciary's breach.  ERISA §§ 405(a)(1)-(3), 29 U.S.C. §§ 1105(a)(1)-(3).

## BACKGROUND

5.     This case involves two distinct and improper transactions conducted by those responsible for managing the affairs of The Employee Ownership Holding Company ("TEOHC") and the fiduciaries responsible for managing the TEOHC Employee Stock Ownership Plan ("ESOP").  With respect to both transactions, the fiduciary defendants consistently took actions that furthered their own interests, the interests of TEOHC corporate officers, and the personal interests of the ESOP trustees at the expense of the ESOP participants.

6.     The first transaction occurred in 2004, when the ESOP fiduciaries agreed to pay TEOHC's president $34.4 million in cash and property in exchange for his ESOP stock and the release of contractual commitments TEOHC purportedly owed to him, including stock options under a 2002 Equity Incentive Plan, a 2002 Value Enhancement Incentive Plan, a Compensation Continuation Agreement, and an Executive Employment Agreement.  At the time, the president's ESOP stock was valued at only $426,687.97.

7.     The fiduciaries failed to properly value the president's stock and contractual commitments.  Instead, the fiduciaries simply approved the payment of $34.4 million in cash and

3

property to TEOHC's president in exchange for his stock and his agreement to release TEOHC from its contractual commitments. The payment was grossly inflated, far exceeded any reasonable value of the stock and contractual commitments, and effectively drew down the majority of the equity value of the company to and for the benefit of one person

8.     As part of this transaction, the ESOP fiduciaries caused $26 million of the $34.4 million to be funneled through the ESOP as a tax-deferred rollover to the president's Individual Retirement Account ("IRA"). At the time of the transaction, two of the ESOP fiduciary trustees were negotiating to manage a portion of the money deposited into the IRA.

9.     David R. Johanson ("Johanson"), a managing partner of Johanson Berenson, LLP, was directly responsible for orchestrating the $34.4 million buyout. He held various conflicting roles, including service provider to the ESOP, named fiduciary of the ESOP, director of TEOHC, corporate officer of TEOHC, outside General Counsel to TEOHC, estate planning counsel to TEOHC's president, and a 50% partner in an investment firm that was negotiating to purchase TEOHC.

10.     The second transaction occurred in 2007 when the ESOP fiduciaries agreed to an asset sale structured so that the ESOP participants would receive payment on their ESOP shares only after TEOHC had satisfied its liabilities under invalid agreements to indemnify certain of the defendants in the event they were sued for, among other things, fiduciary breach. The fiduciaries approved the sale despite the significant risk that the indemnification agreements could result in the ESOP participants receiving a substantially diminished amount for their shares, and despite the fact that one of the ESOP trustees would receive a bonus equal to 2% of the total sale price.

11.     The fiduciaries knew or should have known that the indemnification agreements

4

were invalid under ERISA § 410, 29 U.S.C. § 1110.  Yet the fiduciaries made no effort to challenge the agreements and did nothing to prevent TEOHC from making payments pursuant to the agreements.  To date, the ESOP participants have received only $5 million of the approximately $20 million in proceeds from the sale.

12.     At all times relevant, the ESOP has been the 100% and sole shareholder of TEOHC's issued and outstanding stock.  Indeed, the only asset held by the ESOP is its shares and ownership interest in TEOHC.  Each of the transactions complained of herein resulted in millions of dollars of losses to TEOHC.  Because the ESOP held complete and exclusive ownership of all equity interests in TEOHC, those losses were incurred, dollar for dollar, by the ESOP, its participants and beneficiaries.

13.     By these actions, the ESOP fiduciaries unnecessarily drained assets from TEOHC and reduced the value of the remaining ESOP stock in TEOHC, violating their duty of loyalty to the ESOP and its participants.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

15.     Venue with respect to this action lies in the United States District Court for the Eastern District of California, pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## PARTIES

16.     The Plaintiff Secretary is vested with the authority to enforce the provisions of Title I of ERISA by, among other means, the filing and prosecution of claims against fiduciaries

SECRETARY'S COMPLAINT
Civil Action No. _____

1  and other parties who commit violations of ERISA.  ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§

2  1132(a)(2) and (5).

3      17.    At all times relevant, the Board of Trustees had the authority to administer the

4  ESOP Plan and Trust Agreement, including investing assets in employer stock, voting stock, and

5

6  bringing actions to enforce the rights of the ESOP.  The Board of Trustees is composed of

7  individuals appointed by unanimous action of the Board of Directors; therefore, the Board of

8  Directors is also a fiduciary for purposes of appointing, removing and monitoring the Board of

9

10  Trustees.

11      18.    Defendant Clair R. Couturier, Jr. ("Couturier"), an individual residing in Gig

12  Harbor, Washington and Palm Desert, California, served as the President and CEO of TEOHC

13  and its various subsidiaries from January 21, 2004 through May 31, 2006. Couturier also served

14  as a member of the ESOP's Board of Trustees from January 21, 2004 through November 30,

15

16  2005, and as a member of TEOHC's Board of Directors from January 21, 2004 through March

17  13, 2008.  During the time that he was a trustee of the ESOP, Couturier was responsible for

18  administering and managing the assets of the ESOP.  During the time that he was a member of

19  TEOHC's Board of Directors, Couturier was also responsible for selecting, monitoring and

20  removing fiduciaries of the ESOP.  Couturier was thereby a fiduciary of the ESOP as both a

21

22  trustee and a Director pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21).

23      19.    Defendant Johanson Berenson LLP, a law firm in, among other places, Napa,

24  California, served as general counsel to TEOHC's predecessor entities and then TEOHC from

25  September 5, 2001 through the present.  Johanson Berenson LLP is named as a defendant

26  because it knowingly participated in violations of Title I of ERISA as described herein.

27

28      20.    Defendant David R. Johanson ("Johanson"), an individual residing in Napa

6

County, California, is an attorney at law and a member of the State Bar of California and a managing partner at Johanson Berenson LLP.  Johanson served as TEOHC's Secretary from January 21, 2004 through March 31, 2008, as a member of TEOHC's Board of Directors from January 21, 2004 through March 31, 2008, and as a member of the ESOP's Board of Trustees from January 21, 2004 until sometime after July 20, 2004.  Johanson also periodically served as counsel to defendant Couturier and to defendant Couturier's wife in their individual capacities and served as general counsel to TEOHC.  During the time that he was a trustee of the ESOP, Johanson was responsible for administering and managing the assets of the ESOP.  During the time that he was a member of TEOHC's Board of Directors, Johanson was also responsible for selecting, monitoring and removing fiduciaries of the ESOP.  Johanson was thereby a fiduciary of the ESOP as both a trustee and a Director pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21).

21.     Defendant Robert E. Eddy ("Eddy"), an individual residing in Truckee, California, served as a member of the ESOP's Board of Trustees from January 21, 2004 to the present, as a member of TEOHC's Board of Directors from January 21, 2004 through March 12, 2008, and as TEOHC's President from June 1, 2006 to the present.  During the time that he was a trustee of the ESOP, Eddy was responsible for administering and managing the assets of the ESOP and was responsible for selecting, monitoring and removing other fiduciaries of the ESOP, including defendant David L. Heald.  During the time that he was a member of TEOHC's Board of Directors, Eddy was also responsible for selecting, monitoring and removing fiduciaries of the ESOP.  Eddy was thereby a fiduciary of the ESOP as both a trustee and a Director pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21).

22.     Defendant David L. Heald ("Heald"), an individual residing in Deerfield, Illinois, and his firm, Consulting Fiduciaries, Inc., located in Northbrook, Illinois, were appointed by the

7

Board of Directors and defendant Eddy as independent fiduciaries to the ESOP from November 30, 2005 through the present.  During the time that he was an independent fiduciary of the ESOP, Heald had specific responsibilities relating to the administration and management of the assets of the ESOP delegated to him by the ESOP's Board of Trustees.  Heald was thereby a fiduciary of the ESOP pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21).

23.     Defendant James Roorda ("Roorda"), an individual residing in Riverside, California, served as a member of TEOHC's Board of Directors and as a member of the ESOP's Board of Trustee from January 21, 2004 until sometime after July 20, 2004.  During the time that he was a trustee of the ESOP, Roorda was responsible for administering and managing the assets of the ESOP.  During the time that he was a member of TEOHC Board of Directors, Roorda was also responsible for selecting, monitoring and removing fiduciaries of the ESOP.  Roorda was thereby a fiduciary of the ESOP as both a trustee and a Director pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21).

24.     Defendant Matthew Donnelly ("Donnelly"), an individual residing in Oakland, California, and defendant the Business Appraisal Institute (formerly the California Appraisal Institute), located in San Francisco, California, provided valuation services to TEOHC and the TEOHC ESOP from April 2004 through December 23, 2005.  Defendants Donnelly and the Business Appraisal Institute are named as defendants herein because they knowingly participated in violations of Title I of ERISA as described herein

25.     The Employee Ownership Holding Company ("TEOHC") is a "plan sponsor" of the TEOHC Employee Stock Ownership Plan ("ESOP") pursuant to ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).  The ESOP is an employee pension benefit plan as defined in ERISA § 3(2), 29 U.S.C. § 1002(2).  TEOHC and the ESOP are named as defendants herein pursuant to

8

SECRETARY'S COMPLAINT
Civil Action No. _____

Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

## GENERAL ALLEGATIONS

26.    At all times relevant the ESOP has been invested solely in employer stock and the ESOP has owned 100% of the issued and outstanding shares of TEOHC stock.

27.    At all times relevant the ESOP has been administered by a Board of Trustees composed of individuals appointed by TEOHC's Board of Directors.  Pursuant to Section 16 of the ESOP plan document, the Board of Trustees, and each member individually, are responsible for, among other things, holding ESOP assets, investing ESOP assets, and administering the ESOP.  Pursuant to Section 8 of the ESOP plan document, the Board of Trustees, and each member individually, are also responsible for voting any shares of TEOHC stock not yet allocated to participant accounts in matters involving, among other things, mergers or the sale of substantially all of TEOHC's assets.

28.    Section 14(b) of the ESOP plan document also provides that, when participants retire, they may "put" their shares to the ESOP.  Pursuant to the ESOP plan document, this "put option" permits participants, upon retirement, to sell their shares to TEOHC at the then "Fair Market Value." Id.  "Fair Market Value" is defined in Section 2 of the ESOP plan document as the value of the stock determined by the Board of Trustees in good faith based upon a valuation conducted by an independent appraiser.

a.    **2004 Transaction**:

29.    In January 2004 TEOHC agreed, as part of a merger with one of its predecessor

9

entities, N&NW Manufacturing Holding Company, Inc., that TEOHC would purchase all of defendant Couturier's "equity and equity-like interests" in TEOHC (and related entities) as detailed in an Agreement and Plan of Merger executed at that time. Defendant Eddy signed the Agreement and Plan of Merger on January 21, 2004 as the ESOP's trustee and Couturier signed it the same day in his personal capacity. Defendant Johanson signed this agreement that same day on behalf of TEOHC. Section 10.5 of the Agreement and Plan of Merger provided that it could not be amended, supplemented, canceled or discharged except in writing executed by the parties.

30.     Although Eddy, Couturier, Johanson and Roorda were all trustees of the ESOP at this time, none of them required the ESOP to perform an appropriate valuation of Couturier's "equity and equity-like interests" in TEOHC in connection with the Agreement and Plan of Merger.

31.     In July 2004, the defendants tentatively agreed to amend the Agreement and Plan of Merger to provide defendant Couturier $26 million in cash, plus a $5.5 million property in Palm Desert, a $2.7 million cash "tax gross up" on that property and a $200,000 car (totaling $34.4 million) in exchange for defendant Couturier's ESOP shares as well as Couturier's non-ESOP benefits and executive compensation amounts.

32.     As before, the ESOP fiduciaries never performed an appropriate valuation of Couturier's non-ESOP benefits and executive compensation amounts. The only relevant asset valued at the time by the ESOP's fiduciaries was Couturier's 4,586 shares of TEOHC stock held in his ESOP account, which had been valued by the ESOP at its Fair Market Value of $93.04 per share – $426,687.97 in total.

33.     Instead of obtaining a competent analysis and valuation of the amounts, if any, which TEOHC should pay to defendant Couturier beyond the $426,687.97 for his ESOP shares,

10

at defendant Johanson's suggestion, defendant Eddy hired defendants Donnelly and his firm, the Business Appraisal Institute, to provide a "fairness opinion." The opinion stated that the payment of $26 million and other consideration totaling $34.4 million did not exceed adequate consideration, that the transaction was more favorable to the ESOP than if the ESOP were to immediately sell all of its TEOHC shares, and that the transaction was fair to the ESOP from a financial point of view.

34.    Defendant Eddy accepted this unsupported opinion from defendant Donnelly even though it included no financial analysis or valuation of TEOHC itself, no financial analysis or valuation of defendant Couturier's "equity-like interests" or "other contractual commitments," and it endorsed a transaction that would drain the majority of TEOHC's equity value for the benefit of one person.

35.    Further, at no time did defendants Johanson or Eddy perform any background check or other research into defendant Donnelly's qualifications to provide an opinion. Had they performed such a check or research, Eddy and Johanson would have learned that Donnelly was not qualified to provide an opinion or to value stock because he had no expertise in valuing executive employment benefits, lacked a college degree, lacked any relevant certification, and lacked any relevant license. In addition, had Eddy or Johanson checked with the California Department of Real Estate or performed a criminal background check on Donnelly, Eddy and Johanson would have discovered that Donnelly had been convicted of felony embezzlement, a crime involving moral turpitude, from four entities, including two trusts, in 1984.

36.    This was not the only occasion wherein defendants Johanson and Eddy recommended and engaged the services of defendant Donnelly to provide improper valuation or fairness opinions to the detriment of ERISA-covered plans and their participants. The Secretary

11

SECRETARY'S COMPLAINT
Civil Action No. _____

has discovered other engagements wherein Johanson engaged in a pattern and practice of recommending Donnelly to plan fiduciaries to provide improper or inflated valuation opinions in connection with tens of millions of dollars in transactions involving ERISA-covered plans.  In many of those cases, Eddy acted as a plan fiduciary, responsible for causing ERISA plans to rely on Donnelly's improper or inflated opinions.  In none of those cases, as here, was Donnelly qualified to provide a valuation opinion and in none of those cases, as here, did Donnelly provide a valuation opinion that conformed with the standards for professional valuations.  The 2004 transaction, therefore, was not the only transaction for which Johanson, Eddy and Donnelly were responsible that resulted in substantial losses to ERISA-covered plans as well as their participants and beneficiaries.

37.     At the same time that defendant Eddy was responsible for representing TEOHC and the ESOP in its negotiations with defendant Couturier over the $34.4 million in unsupported payments, Eddy was also negotiating with Couturier to become the manager of a portion of those same amounts once paid to Couturier.  At the very same time that Eddy, on behalf of TEOHC and the ESOP had an obligation to minimize any non-ESOP amounts paid to Couturier, Eddy placed himself in a position where he had a personal financial interest in maximizing that amount.

38.     Rather than have TEOHC pay the $26 million in cash directly to defendant Couturier (which is how the other components of the $34.4 million were to be provided), defendants Eddy, Johanson, Roorda and Couturier instead engineered the transaction so that $26 million in cash was funneled into Couturier's Individual Retirement Account (the "IRA").  In connection with this payment, on July 20, 2004, Eddy executed documents requiring the ESOP to deposit Couturier's 4,586 shares of ESOP stock worth $426,687.97 into the IRA.  Eddy then

12

directed TEOHC to immediately, on the same day that Couturier's $426,687.97 in ESOP stock was rolled over into his IRA, "pay $26,000,000.00 in the aggregate to repurchase the Company Stock rolled over into" the IRA.

39.    Consequently, even though the ESOP plan document provided that defendant Couturier could only sell his stock back to TEOHC for its Fair Market Value ($426,687.97), defendants Eddy, Johanson, Couturier and Roorda instead caused TEOHC to "put" the shares distributed to Couturier's IRA for $26 million.  At the time, all of the stock held by the ESOP (i.e., 100% of TEOHC's equity value), including Couturier's shares, had been determined by the ESOP's Board of Trustees to be worth no more than $15 million.

40.    Defendants Eddy, Couturier, Roorda and Johanson, were all trustees of the ESOP at the time of the 2004 payout of $34.4 million to Couturier.  Although each of these trustees knew of the facts set forth above, and each knew that Couturier was receiving amounts in excess of the value of all of TEOHC's equity as determined by them, none of these defendants did anything to prevent or correct Eddy's actions.

41.    Indeed, like defendant Eddy, at the time of the 2004 transaction, defendant Roorda was also negotiating to manage a portion of the $26 million that he anticipated would be transferred to Couturier's IRA.  Ultimately, Eddy and Roorda were each appointed to manage a portion of the total amount transferred to Couturier's IRA.

42.    Defendants Johanson and Johanson Berenson LLP were also financially conflicted.  At the time of the 2004 transaction, Johanson and Johanson Berenson LLP were employed by Couturier and his wife to provide personal real estate and tax planning services (and intended to continue doing so).

43.    Further, in separate negotiations with TEOHC, at the time of the 2004 transaction,

13

SECRETARY'S COMPLAINT
Civil Action No. _____

Johanson was attempting to buy TEOHC through a partnership in which he was a 50% partner and managing member. In this regard, he informed the other parties to the 2004 transaction on July 20, 2004, that the 2004 transaction could foreseeably advance his negotiations and that Johanson could "receive certain financial benefits" if he was successful with those negotiations.

44.     At the time of the 2004 transaction, defendant Roorda prepared the audited financial statements and tax returns for TEOHC (and related entities). In addition, he also provided accounting and financial advice to Couturier and his wife with respect to estate and tax planning and intended to continue doing so.

45.     At the time of the 2004 transaction, Couturier, Eddy, Roorda and Johanson were all members of TEOHC's Board of Directors and Board of Trustees. As such, they were responsible for appointing Eddy as special trustee and fiduciary of the ESOP, monitoring his activities and, if appropriate, removing Eddy from his fiduciary position. Yet even though each knew of Eddy's actions in approving the overpayment to Couturier and each knew of Eddy's personal conflicts with the ESOP, each of these defendants failed to comply with his own fiduciary and co-fiduciary duties to protect the ESOP and its participants.

46.     At no time did the fiduciaries, as the representatives of the ESOP, TEOHC's sole shareholder, attempt to prevent or reverse the waste of corporate assets by challenging the validity of Couturier's compensation claims and non-ESOP benefits, TEOHC's decision to honor them, or the $34.4 million payment amount. Although the ESOP was the sole owner of TEOHC, and this waste of corporate assets was actionable under state or federal law, the Plan fiduciaries failed to take any action under state or federal law to protect the ESOP's interests.

      b.       **2007 Transaction**:

14

47.     The second transaction complained of herein occurred in 2007, when defendants Heald and Consulting Fiduciaries, Inc., in their capacities as independent fiduciaries of the ESOP, approved the sale of TEOHC's assets.  The sale was structured so that the ESOP participants would receive payment on their shares only after TEOHC's liabilities were satisfied.

48.     Previously, TEOHC and its predecessor companies had entered into various agreements to indemnify TEOHC's corporate officers and ESOP fiduciaries in the event they were sued.  These indemnification agreements were a substantial liability for TEOHC.  On October, 26, 2005,  defendants Johanson, Eddy and Couturier, in their capacities as Board of Director members, affirmed and "accepted" these indemnification rights for themselves out of TEOHC assets after they were sued for ERISA fiduciary misconduct and other misdeeds going back to at least 2001.  Johnson v. Couturier, No. 2:05-cv-02046 (RRB KJM) (E.D. Cal.) (the "Class Action").

49.     By voting to recognize and accept TEOHC's indemnification obligations with respect to the ERISA claims in the Class Action, Johanson, Eddy and Couturier created a means by which, as ESOP fiduciaries, they could exculpate themselves from liability for any fiduciary breaches under ERISA.  The ESOP would effectively pay for the defense and any settlement or recovery on the ERISA claims.  Funds used to defend against the ERISA claims would reduce the value of the ESOP's stock in the company.  Because the indemnification agreements effectively relieved the defendants of liability in the context of this 100% ESOP owned company, they are invalid under ERISA § 410.

50.     On November 30, 2005, Defendants Heald and Consulting Fiduciaries, Inc. were appointed by TEOHC and the ESOP's Board of Trustees to serve as an Independent Fiduciary for the ESOP.  Pursuant to the terms of this appointment, Heald and Consulting Fiduciaries, Inc.

15

1   were to serve as the ESOP's fiduciary for the purpose of, among other things, "reviewing or

2   considering any potential strategic transaction involving the Company."  Heald and Consulting

3

4   Fiduciaries, Inc. also agreed to provide written annual reports summarizing their activities (which

5   they never did).

6          51.     Thereafter, in 2006, TEOHC and its Board of Directors, including defendants

7   Johanson, Couturier and Eddy, decided to sell TEOHC.  On January 23, 2007, the original

8   agreement with defendants Heald and Consulting Fiduciaries, Inc. was amended to add that

9

10   Heald and Consulting Fiduciaries, Inc. would now be responsible for (a) approving or

11   disapproving defendant Eddy's employment agreement with TEOHC and (b) approving or

12   disapproving an Asset Purchase Agreement with Gibraltar Industries, Inc. ("Gibraltar") by which

13   Gibraltar would purchase TEOHC's assets for $60,880,000.  The Asset Purchase Agreement that

14   defendants Heald and Consulting Fiduciaries, Inc. were being asked to consider required that any

15   amounts claimed by defendants Johanson, Eddy and Couturier as indemnification claims had to

16

17   be paid first before payments could be made to the ESOP or its participants.

18          52.     At the time of the 2007 sale, defendants Heald and Consulting Fiduciaries, Inc.

19   knew or should have known that the indemnification agreements were invalid.  Defendants Heald

20   and Consulting Fiduciaries, Inc. also knew that TEOHC officers and ESOP fiduciaries were

21   engaged in ongoing litigation, that a $5 million insurance policy set up to cover defense costs was

22   dwindling, that the Board of Directors intended to direct TEOHC to pay out on the agreements,

23   and that a sizeable amount, if not all, of TEOHC's remaining assets might be used to fund the

24   agreements.  Despite this knowledge, rather than challenge the indemnification agreements or

25

26   quantify their potential cost to the ESOP, Heald and Consulting Fiduciaries, Inc. approved a sale

27   in which ESOP participants would receive payment only after liabilities under the invalid

28

16

1   indemnification agreements were satisfied.

2        53.    Indeed, in February of 2007, defendants Heald and Consulting Fiduciaries, Inc.

3

4 obtained a memorandum from their counsel questioning the enforceability of defendants

Johanson, Eddy and Couturier's self-granted indemnification rights from TEOHC.  In that

5

6 memorandum, Heald and Consulting Fiduciaries, Inc. were informed of their counsels' view that

7 the indemnification provisions in fact "likely do not require TEOHC to indemnify" Johanson,

8 Eddy or Couturier in their capacities as ESOP fiduciaries in connection with the <u>Johnson</u> action.

9

10 Even so, Heald and Consulting Fiduciaries, Inc. failed to invalidate the indemnification rights that

Johanson, Eddy and Couturier had granted themselves.  Heald and Consulting Fiduciaries, Inc.

11

12 also failed to negotiate for a release of these indemnification rights as part of the asset sale.

13        54.    On March 13, 2007, despite the fact that they had never valued the potential costs

14

15 of the other defendants' self-granted indemnification claims and knew that those costs could be

large enough to eliminate any value expected by the ESOP or its participants, defendants Heald

16

17 and Consulting Fiduciaries, Inc. issued a report to the ESOP's participants incorrectly stating that

18 "the consideration to be received by the ESOP in the proposed asset sale equals or exceeds the

19 fair market value of the assets of the Company and [] the proposed sale is fair to the ESOP from a

20 financial point of view."

21

22        55.    Defendants Heald and Consulting Fiduciaries, Inc. also informed participants that

23 "the Company will not be in a position to make distributions to the ESOP until the litigation is

24 ended since it must retain funds in case it has to make any payments pursuant to the litigation."

25 In this regard, participants were also told that TEOHC would only honor defendant Johanson,

26

27 Eddy and Couturier's self-granted indemnification rights "if a court so directs."  Participants were

28 not told that none of the fiduciaries of the ESOP intended to do anything to object to such a court

17

1    direction or do anything to prevent the payment of indemnification costs by TEOHC even

2    without a court direction.

3          56.     After they approved the asset sale to Gibraltar, defendants Heald and Consulting

4    Fiduciaries, Inc. then directed defendant Eddy, the remaining trustee of the ESOP (the others

5    having previously resigned) to vote the ESOP shares in favor of the asset sale. At the time that he

6    followed this direction and voted the ESOP shares in favor of the asset sale, Eddy knew, or

7    should have known, that it was imprudent to do so without resolving the possibility that payments

8    on the indemnification claims (including Eddy's own indemnification claims) could substantially

9    reduce any payout to the ESOP participants from that same sale.

10         57.     Additionally, when defendants Heald and Consulting Fiduciaries, Inc. directed

11   defendant Eddy to vote the ESOP's shares in favor of the 2007 transaction, these defendants knew

12   that Eddy would receive a "success fee" in excess of $1.3 million as a result of the sale. That fee

13   had been approved by Heald and Consulting Fiduciaries, Inc. as part of TEOHC's employment

14   contract with Eddy. Each of these defendants therefore knew that, when Eddy followed Heald

15   and Consulting Fiduciaries, Inc.'s directions to vote the ESOP's shares in favor of the asset sale,

16   Eddy would receive more than $1.3 million as a result of that vote. By accepting this direction

17   and exercising his fiduciary control over the voting rights of the ESOP's shares in favor of the

18   asset sale and the resulting $1.3 million payment to himself, defendant Eddy also violated

19   ERISA's self-dealing and anti-kickback prohibited transaction provisions.

20         58.     At the time of the 2007 transaction, defendants Couturier, Johanson and Eddy

21   were all members of TEOHC's Board of Directors responsible for monitoring and, if necessary,

22   removing their appointees defendants Heald, Consulting Fiduciaries, Inc. and Eddy. At the time

23   of the 2007 transaction, Couturier, Johanson and Eddy each knew that their own self-granted and

18

invalid indemnification rights had been placed ahead of the ESOP and participants' rights in the Asset Purchase Agreement and that their appointee Eddy was conflicted because of his own interest in receiving a success fee in excess of $1.3 million when he approved the asset sale on behalf of the ESOP.  Even so, Couturier, Johanson and Eddy failed to act to protect the ESOP and its participants or prevent the payment to Eddy.

59.     On April 10, 2007, Gibraltar acquired all of the rights, title and interest of the assets of TEOHC for $60,880,000.  After certain liabilities were paid with asset sale proceeds, $22,229,928.56 was paid to various accounts held by TEOHC, including an escrow account, and a total of $1,382,724 was paid to Eddy as a "success fee."

60.     By June 30, 2007 TEOHC reported that the net balance of its total assets, including the amounts paid by Gibraltar but reduced by remaining corporate liabilities, equaled $20,544,940.  In January of 2008, $5 million was then paid to ESOP participants.  After that payment, the remaining $16,544,940 was slated to be available to the ESOP and its participants once all anticipated liabilities had been paid off.

61.     Thereafter, defendants Johanson, Couturier and Eddy began making claims based on their self-granted indemnification rights to TEOHC which, by June of 2008, were estimated to total $1,500,000.  By that date, defendants Johanson, Couturier and Eddy had resigned as directors of TEOHC and had been replaced by Jack Pfeffer.  Pfeffer reported that, as of June 30, 2008, in addition to the $1,500,000 already claimed as indemnification, he anticipated that the same claimants would assert at least another $5,605,000 in indemnification claims and possibly more.  Although TEOHC had $16 million at the time, because of these claims, and additional operating and other costs that he expected TEOHC to incur, Pfeffer reported as of June 30, 2008 that TEOHC's net assets were only worth $1,845,000.  To date none of the remaining

19

approximately $16 million in cash held by TEOHC has been released to the ESOP or its participants.

62.     At no time did the fiduciaries, as the representatives of the ESOP as the sole shareholder of TEOHC, attempt to prevent or reverse the waste of corporate assets by challenging the validity of the indemnification agreements or TEOHC's decision to honor them. Although the ESOP was the sole owner of TEOHC, and this waste of corporate assets was actionable under state or federal law, the Plan fiduciaries failed to take any action under state or federal law to protect the ESOP's interests.

## ERISA'S FIDUCIARY PROVISIONS:

63.     Defendants Couturier, Eddy, Johanson, Roorda, Heald and Consulting Fiduciaries, Inc. were required to discharge their duties with respect to the ESOP with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

64.     These defendants were also required to discharge their duties with respect to the ESOP solely in the interest of the participants and beneficiaries of the ESOP and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the ESOP.  ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

65.     These defendants were further required to discharge their duties with respect to the ESOP in accordance with the documents and instruments governing the ESOP insofar as such documents and instruments were consistent with ERISA's other fiduciary provisions.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

20

66.     Additionally, ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1) prohibited these defendants from dealing with the assets of the ESOP in their own interest and for their own account.

67.     ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3) also prohibited these defendants from receiving any consideration for their own personal account from any party dealing with the ESOP in connection with a transaction involving the assets of the ESOP.

68.     ERISA § 405(a), 29 U.S.C. § 1105(a) imposes liabilities on these defendants for breaches by their co-fiduciaries if defendants (1) participated knowingly in or knowingly concealed a co-fiduciary's breach, (2) through their own breach of fiduciary duty under ERISA § 404(a) enabled another fiduciary's breach, or (3) knew of a co-fiduciary's breach and failed to make reasonable efforts to remedy it.

COUNT I

**2004 Transaction - Imprudence, Disloyalty
and Failure to Comply With Plan Documents -
ERISA §§ 404(a)(1)(A), (B) & (D):**

69.     Paragraphs 1 through 68 are incorporated herein as though fully set forth.

70.     Defendant Eddy, as a trustee of the ESOP, breached his fiduciary duties to the ESOP to act solely in the interest of the participants and beneficiaries with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §§ 404(a)(1)(A) & (B), by, among other things:

        a.      Causing the ESOP to approve the payment of $34.4 million in cash and

21

other consideration to Couturier when no valuation was performed for the

ESOP and the amount paid grossly exceeded the value received by

TEOHC;

b.    Causing the ESOP to approve, as part of the $34.4 million payment, the

$26 million purchase of Couturier's 4,586 shares of TEOHC stock held in

his ESOP account, which had been valued by the ESOP at $426,687.97;

c.    Causing the ESOP to roll over Couturier's $426,687.97 in stock into

Couturier's IRA when he knew that TEOHC intended to buy that stock

back for $26 million, more than its Fair Market Value;

d.    Failing to prevent or reverse the waste of corporate assets by failing to

challenge the validity of Couturier's various contractual commitments

related to his compensation, TEOHC's decision to honor the commitments,

and the payment to Couturier of $34.4 million in cash and other

consideration, including the $26 million purchase of Couturier's 4,586

shares of TEOHC stock;

e.    Hiring Donnelly to conduct a fairness opinion for the ESOP in connection

with the 2004 transaction when Eddy knew, or should have known, that

Donnelly was not qualified to provide the requested opinion, that

Donnelly had been convicted of felony embezzlement from other trusts,

and that Donnelly's analysis was unreliable; and

f.    Causing the ESOP to engage in a transaction when Eddy knew that he was

negotiating for the management of a portion of Couturier's payout and that

Eddy was thereby personally conflicted by his own financial interest in

22

1    maximizing the amount paid to Couturier.

2    71.    Defendant Eddy also violated his fiduciary duty to exercise his responsibilities

3    solely in accordance with the documents and instruments governing the ESOP insofar as such

4    documents and instruments are consistent with Title I of ERISA in violation of ERISA §

5    404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), when he caused the ESOP to engage in a transaction

6

7    whereby Couturier's ESOP stock would be "put" back to TEOHC for $26 million when he knew

8    that the stock's Fair Market Value as determined by the ESOP's Board of Trustees was only

9    $426,687.97.

10   72.    As a result of the foregoing breaches of fiduciary duty, Eddy caused a loss to the

11   ESOP for which he is personally liable.  ERISA § 409(a), 29 U.S.C. § 1109(a).

12

13   73.    Defendants Couturier, Johanson, Eddy and Roorda, as members of TEOHC's

14   Board of Directors, appointed Eddy as a fiduciary of the ESOP and were obligated to monitor

15   Eddy in the performance of his fiduciary duties.  Even so, at no time did Couturier, Johanson or

16   Roorda consider or review Eddy's performance, even though they knew of his breaches of duty

17   as set forth above, and at no time did they take action to replace Eddy with a suitable

18   independent fiduciary in connection with the 2004 transaction or take other action to prevent or

19   remedy the 2004 transaction, in violation of ERISA §§ 404(a)(1)(A) & (B), 29 U.S.C. §§

20   1104(a)(1)(A) & (B).

21

22   74.    As a result of the foregoing imprudent acts and omissions, Couturier, Johanson

23   and Roorda caused a loss to the ESOP for which they are personally liable.  ERISA § 409(a), 29

24   U.S.C. § 1109(a).

25   75.    As set forth above, Eddy, Couturier, Johanson and Roorda each (a) participated in

26   each other's breach of duty, (b) enabled the other fiduciaries of the ESOP to breach their own

27

28

SECRETARY'S COMPLAINT
Civil Action No. _____

23

duties relating to the 2004 transaction, (c) knew or should have known of one another's breach of

fiduciary duty and failed to take action to prevent or remedy the gross waste of corporate assets,

and (d) failed to make reasonable efforts under the circumstances to remedy those breaches of

duty. Accordingly, Eddy, Couturier, Johanson and Roorda are each liable as a co-fiduciary for

the losses caused thereby. ERISA §§ 405(a)(1), (2) & (3), 502(a)(2) & (5), 29 U.S.C.

§§ 1105(a)(1), (2) & (3), 1132(a)(2) & (5).

76.     As set forth above, defendants Roorda, Johanson and his firm Johanson Berenson,

LLP and Donnelly and his firm the Business Appraisal Institute each knowingly participated in

the fiduciary breaches as described herein relating to the 2004 transaction. Each, therefore, may

be enjoined from any act or practice which violates Title I of ERISA and may be made subject to

such other appropriate equitable relief to redress the violations in which they knowingly

participated. ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

## COUNT II

### 2007 Transaction - Imprudence and Disloyalty
### ERISA §§ 404(a)(1)(A) & (B)

77.     Paragraphs 1 through 76 above are incorporated herein as though fully set forth.

78.     Defendants Heald and Consulting Fiduciaries, Inc. breached their fiduciary duties

to the ESOP to act solely in the interest of the participants and beneficiaries with the care, skill,

prudence, and diligence under the circumstances then prevailing that a prudent man acting in a

like capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims, in violation of ERISA §§ 404(a)(1)(A) & (B), 29 U.S.C. §§

1104(a)(1)(A) & (B), by, among other things:

24

a.  Failing to thoroughly evaluate the transaction and negotiate or prevent the improper expenditure of corporate assets under the invalid indemnification agreements;

b.  Approving the transaction despite knowing that the ESOP and its participants would receive their money only after TEOHC paid all of the indemnification claims made by defendants Eddy, Johanson, and Couturier, and despite knowing that the cost of honoring those claims could erase any value that the participants might receive;

c.  Approving the transaction despite knowing that the fairness opinions and valuation reports upon which they were relying did not account for the possible cost of complying with the indemnification agreements;

d.  Failing to exercise authority as an independent fiduciary to negotiate on behalf of the ESOP to secure the asset sale terms most favorable to the ESOP participants;

e.  Failing to prevent or reverse the waste of corporate assets by failing to challenge the validity of the indemnification agreements or TEOHC's decision to honor them;

f.  Failing to invalidate the indemnification agreements prior to the transaction after being informed by counsel that the indemnification provisions in fact "likely do not require TEOHC to indemnify;"

g.  Failing to take any action to prevent payments in connection with the invalid indemnification agreements despite informing participants that no payments would be made without court direction;

25

h.   Approving the transaction despite knowing that Eddy would receive a "success fee" of more than $1.3 million from funds that would otherwise go to the ESOP and its participants; and

i.   Directing Eddy to vote the shares of the ESOP in favor of the asset sale.

79.   As a result of the foregoing imprudent acts and omissions, Heald and Consulting Fiduciaries, Inc. caused a loss to the ESOP for which they are personally liable. ERISA § 409(a), 29 U.S.C. § 1109(a).

80.   Eddy, in his capacity as trustee of the ESOP, breached his own fiduciary duties to the ESOP to act solely in the interest of the participants and beneficiaries with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §§ 404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B), by, among other things:

a.   Following Heald and Consulting Fiduciaries, Inc.'s directions to vote the shares of the ESOP in favor of the asset sale when he knew or should have known that it was imprudent to do so and despite his duty to follow only prudent directions that complied with ERISA;

b.   Following Heald and Consulting Fiduciaries, Inc.'s directions to vote the shares of the ESOP in favor of the asset sale despite his knowledge that the ESOP and its participants would receive their money only after TEOHC paid all of the indemnification claims made by defendants Eddy, Johanson, and Couturier, and despite his knowledge that the cost of honoring those claims could erase any value that the participants might

26

SECRETARY'S COMPLAINT
Civil Action No. _____

receive

c.   Failing to take any action to prevent payments in connection with the invalid indemnification agreements;

d.   Following Heald and Consulting Fiduciaries, Inc.'s directions to vote the shares of the ESOP in favor of the asset sale when he knew or should have known that he would receive an improper and illegal "success fee" of more than $1.3 million from funds that would otherwise go to ESOP and its participants; and

e.   Following Heald and Consulting Fiduciaries, Inc.'s directions to vote the shares of the ESOP in favor of the asset sale when he knew that payment on the indemnification agreements could substantially reduce and possibly eliminate any payout to the ESOP participants.

81.   As a result of the foregoing breaches of fiduciary duty, Eddy caused a loss to the ESOP for which he is personally liable.  ERISA § 409(a), 29 U.S.C. § 1109(a).

82.   Defendants Couturier, Johanson and Eddy, as members of TEOHC's Board of Directors at the time of the 2007 transaction, and Eddy as a trustee of the ESOP at the time of the 2007 transaction, appointed Heald, Consulting Fiduciaries, Inc., and Eddy to their respective positions as fiduciaries of the ESOP and were obligated to monitor Heald, Consulting Fiduciaries, Inc., and Eddy in the performance of their fiduciary duties.  Even so, at no time did Couturier, Johanson or Eddy consider or review Heald, Consulting Fiduciaries, Inc., and Eddy's performance even though they knew of the appointed fiduciaries' breaches of duty as set forth above.  At no time did Couturier, Johanson or Eddy take action to replace Heald, Consulting Fiduciaries, Inc., and Eddy with a suitable independent fiduciary in connection with the 2007

27

SECRETARY'S COMPLAINT
Civil Action No. _____

transaction or take other action to prevent the 2007 transaction, in violation of ERISA §§

404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B).

83.     As a result of the foregoing imprudent acts and omissions, Couturier, Johanson

and Eddy caused a loss to the ESOP for which they are personally liable.  ERISA § 409(a), 29

U.S.C. § 1109(a).

84.     As set forth above, Eddy, Couturier, Johanson, Heald and Consulting Fiduciaries,

Inc., each (a) participated in each other's breach of duty, (b) enabled the other fiduciaries of the

ESOP to breach their own duties relating to the 2007 transaction, (c) knew or should have known

of one another's breaches of fiduciary duty and failed to take action regarding the 2007

transaction, and (d) failed to make reasonable efforts under the circumstances to remedy those

breaches of duty.  Accordingly, Eddy, Couturier, Johanson, Heald and Consulting Fiduciaries,

Inc. are each liable as a co-fiduciary for the losses caused thereby.  ERISA §§ 405(a)(1), (2) &

(3), 502(a)(2) & (5), 29 U.S.C. §§ 1105(a)(1), (2) & (3), 1132(a)(2) & (5).


## COUNT III

### 2007 Transaction - Self Dealing and Kickback Violations
### ERISA §§ 406(b)(1) & (3)

85.     Paragraphs 1 through 84 above are incorporated herein as though fully set forth.

86.     Defendant Eddy, in his capacity as a trustee of the ESOP, violated ERISA §§

406(b)(1) & (3), 29 U.S.C. §§ 1106(b)(1) & (3), by causing the ESOP to engage in a transaction

involving the ESOP and its assets despite knowledge that he would receive a "success fee" of

more that $1.3 million as a result of the 2007 transaction.  By voting the ESOP stock to approve

the sale, Eddy dealt with the assets of the ESOP (its voting rights) in his own interest and for his

28

own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), and caused the Plan to engage in a transaction which resulted in a fiduciary receiving consideration for his own account from a party dealing with the plan in connection with a transaction involving the assets of the plan, in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

87.   As a result of the foregoing prohibited transaction, Eddy caused a loss to the ESOP for which he is personally liable.  ERISA § 409(a), 29 U.S.C. § 1109(a).

88.   As set forth above, Couturier, Johanson, Heald and Consulting Fiduciaries, Inc., each (a) participated in Eddy's prohibited transactions, (b) enabled Eddy to engage in prohibited transactions, (c) knew or should have known of Eddy's prohibited transactions and failed to take action, and (d) failed to make reasonable efforts under the circumstances to remedy those prohibited transactions.  Accordingly, Couturier, Johanson, Heald and Consulting Fiduciaries, Inc. are each liable as co-fiduciaries for the losses caused thereby.  ERISA §§ 405(a)(1), (2) & (3), 502(a)(2) & (5), 29 U.S.C. §§ 1105(a)(1), (2) & (3), 1132(a)(2) & (5).

89.   Through their directions to Eddy, Heald and Consulting Fiduciaries, Inc., knowingly participated in this violation, and are therefore liable as co-fiduciaries under ERISA §§ 405(a)(1), (2), & (3), 502(a)(2) & (5), 29 U.S.C. §§ 1105(a)(1), (2) & (3), 1132(a)(2) & (5).

<u>PRAYER</u>

**WHEREFORE**, the Secretary of Labor prays that this Court enter an Order:

1.   Requiring each of the fiduciary defendants involved with the 2004 transaction, Couturier, Johanson, Eddy and Roorda, jointly and severally to restore all losses caused to the ESOP as a result of their fiduciary breaches in connection with the 2004 transaction;

2.   Requiring Eddy and Roorda to disgorge any fees or any other sums that they

29

received for managing any money paid to Couturier in connection with the 2004 transaction;

3.      Requiring Donnelly and the Business Appraisal Institute to disgorge any fees received by them in connection with the 2004 transaction;

4.      Requiring Roorda and Johanson, Berenson, LLP to disgorge any fees received by them in connection with the 2004 transaction;

5.      Requiring the fiduciary defendants involved in the 2007 transaction, Couturier, Johanson, Eddy, Heald and Consulting Fiduciaries, Inc., jointly and severally to restore all losses caused to the ESOP as a result of their fiduciary breaches in connection with the 2007 transaction;

6.      Requiring Consulting Fiduciaries, Inc. and Johanson Berenson, LLP to disgorge any fees received by them in connection with the 2007 transaction;

7.      Requiring Eddy to disgorge the $1,382,724 "success fee" he received as a result of the 2007 transaction;

8.      Finding the indemnification agreements to be invalid under ERISA § 410, 29 U.S.C. § 1110;

9.      Enjoining TEOHC from releasing any funds under the indemnification agreements;

10.     Requiring the defendants to reimburse the ESOP for any monies they received under the indemnification agreements;

11.     Removing Heald and Eddy as fiduciaries of the ESOP and appointing an independent fiduciary to wrap up the ESOP's affairs and make distributions to the participants;

12.     Permanently enjoining all defendants from serving as fiduciaries or service providers to ERISA plans in the future;

30

1        13.    Granting such other relief as may be equitable, just and proper.

2    Respectfully submitted:

3

4

    Dated: __November 13, 2008__        For the Secretary:

5

6                                     GREGORY F. JACOB
                                 Solicitor of Labor

7                                     TIMOTHY D. HAUSER

8                                     Associate Solicitor
                                 Plan Benefits Security Division

9

10                                    LAWRENCE BREWSTER
                                 Regional Solicitor

11                                    San Francisco Office of the Solicitor

12                                    DANIELLE L. JABERG
                                 Counsel for ERISA

13                                    San Francisco Office of the Solicitor

14                                    MICHAEL SCHLOSS

15                                    Senior Trial Attorney
                                 Plan Benefits Security Division

16

17                                    By: _/s/ Michael Schloss_
                                 MEGAN GUENTHER

18                                    ROBYN M. SWANSON
                                 Trial Attorneys

19                                    Plan Benefits Security Division

20

21                                    Attorneys for Plaintiff
                                 Secretary of the United States

22                                    Department of Labor

23

24

25

26

27

28

31

SECRETARY'S COMPLAINT
Civil Action No. _____

1

**CERTIFICATE OF ELECTRONIC SERVICE**

2      I am more than eighteen years old and not a party to this action.  My business

3  address is Orrick, Herrington & Sutcliffe LLP, 400 Capitol Mall, Suite 3000, Sacramento,

4  California  95814-4497.

5      On November 20, 2008, the following document:  **THE EMPLOYEE**

6  **OWNERSHIP HOLDING COMPANY, INC.'S MOTION FOR TEMPORARY STAY;**

7  **REQUEST FOR IMMEDIATE HEARING** was served upon Arbitrator Honorable Richard L.

8  Gilbert and all interested parties in this action by PDF format via electronic mail as follows:

9
10
11

    Hon. Richard L. Gilbert
    2630 J Street
    Sacramento, CA  95816
    E-mail:  richardlgilbert@rgilbertadr.com

12
13
14
15
16

    Kevin M. Seibert
    Anthony Vignolo
    Downey Brand LLP
    3425 Brookside Road, Suite A
    Stockton, CA  95291
    E-mail:  kseibert@downeybrand.com
             avignolo@downeybrand.com

17
18
19

    Gary D. Greenwald
    Keller Rohrback, L.L.P.
    3101 North Central Avenue, Suite 900
    Phoenix, AZ  85012
    E-mail:  ggreenwald@kellerrohrback.com

20
21
22

    Terence J. Devine
    Devine, Markovits & Snyder, LLP
    52 Corporate Circle, Suite 207
    Albany, NY  12203
    E-mail:  tdevine@dmslawyers.com

23      I declare under penalty of perjury under the laws of the United States that the

24  foregoing is true and correct.  Executed on November 20, 2008 in Sacramento, California.

25
26
27                        _____
                          Wanda Peters
28

OHS West:260553810.2