DOWNEY BRAND LLP
KEVIN M. SEIBERT (Bar No. 119356)
MEGHAN M. BAKER (Bar No. 243765)
621 Capitol Mall, 18th Floor
Sacramento, CA  95814-4731
Telephone:      (916) 444-1000
Facsimile:       (916) 444-2100
mbaker@downeybrand.com
kseibert@downeybrand.com

Attorneys for Non-Party Bruce Couturier

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GREGORY JOHNSON, WILLIAM
RODWELL, EDWARD RANGEL,

        Plaintiffs,

    v.

CLAIR COUTURIER JR. et al.,

        Defendants.

DARLEEN STANTON,

        Plaintiff,

    v.

CLAIR COUTURIER JR. et. al,

        Defendants.

Case No.  2:05-cv-02046

**OPPOSITION TO MOTION FOR LEAVE
TO FILE SUPPLEMENTAL COMPLAINT
AND MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF[1]**

**ORAL ARGUMENT REQUESTED**

DOWNEY BRAND LLP

---

[1] On December 11, 2008, the court granted non-party Bruce Couturier permission to specially appear to file an Opposition to the Motion for Leave to Amend and Temporary Restraining Order/Preliminary Injunction (Doc. #483) and Motion for Stay (Doc. # 496).  Through this filing, Bruce Couturier does not intend to make a general appearance in this action, waive any affirmative defenses, or waive any jurisdictional or other defects.

973930.3

1

OPPOSITION TO MOTION TO AMEND AND MOTION FOR INJUNCTIVE RELIEF

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ....................................................................................................2

    A.    General Background ....................................................................................2

    B.    The Federal Action .....................................................................................2

    C.    The Arbitration Proceedings .......................................................................3

III.  PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND THEIR
      COMPLAINT TO ASSER CLAIMS AGAINST BRUCE COUTURIER .......................4

    A.    Legal Standard ............................................................................................5

    B.    Plaintiffs Unduly Delayed In Seeking Leave to Amend .............................5

    C.    Bruce Couturier Would Be Unduly Prejudiced by Amendment .................6

    D.    Plaintiffs Have Brought this Amendment in Bad Faith And With Dilatory
          Motive .........................................................................................................9

    E.    The Proposed Amendment Would Be Futile .............................................11

          1.    The ERISA Claim Is Untenable .....................................................11

          2.    The "Double Derivative" Claim for Breach of Fiduciary Duty Also
                Fails .................................................................................................15

IV.   THE COURT SHOULD NOT STAY THE ARBITRATION OR ALLOW
      PLAINTIFFS TO INTERVENE ...............................................................................17

    A.    Legal Standard ..........................................................................................18

    B.    Plaintiffs Have Not Demonstrated A Likelihood of Success On the Merits ........18

    C.    Plaintiffs Have Not Demonstrated that They Would Be Irreparably Harmed
          If the Court Does Not Grant Preliminary Relief .......................................20

    D.    The Balance of the Hardships Favors Bruce Couturier .......................................22

    E.    Plaintiffs Have No Right To Stay or Intervene in the Arbitration ......................23

    F.    The Court Should Not Enjoin Payment of the Arbitrator's Prior Order on
          Bruce Couturier's Motion re: Payment Agreement ...............................................24

V.    CONCLUSION ....................................................................................................25

DOWNEY BRAN D LLP

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*American Passage Media Corp. v. Cass Comm'n, Inc.*,
750 F.2d 1470 (9th Cir. 1985) ........................................................................18

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
465 F.3d 946 (9th Cir 2006) ........................................................................5, 6

*Batchelor v. Oak Hill Medical Group*,
870 F.2d 1446 (9th Cir. Cir. 1989).............................................................11, 12

*Benda v. Grand Lodge of the Int'l Ass'n of Machinists*,
584 F.2d 308 (9th Cir. 1978),
*cert. dismissed*, 441 U.S. 937 (1979) ............................................................18

*Bendaoud v. Hodgson*,
2008 U.S. Dist LEXIS 72788, at *52-54 (D. Mass. Sept. 24, 2008) ...................14

*Campbell Soup Co. v. ConAgra, Inc.*,
977 F.2d 86 (3d Cir. 1992) ...........................................................................21

*Chodos v. West Publishing Co.*,
292 F.3d 992 (9th Cir. 2002) ...........................................................................5

*Church v. City of Huntsville*,
30 F.3d 1332 (11th Cir. 1994) .......................................................................21

*Doster, Inc. v. Internet Corp. for Assigned Names and Numbers*,
296 F.Supp. 2d 1159 (C.D. Cal. 2003)........................................................19, 20

*Earth Island Institute v. United States National Forest Service*,
351 F.3d 1291 (9th Cir. 2003) .......................................................................18

*Eckelkamp v. Beste*,
201 F.Supp.2d 1012 (E.D. Mo. 2002),
*aff'd* 315 F.3d 863 (8th Cir. 2002) ............................................................14, 16

*Flynt Distributing Co. v. Harvey*,
734 F.2d 1389 (9th Cir. 1984) .......................................................................18

*Foman v. Davis*,
371 U.S. 178 (1962) ....................................................................................5, 9

*Goldie's Bookstore, Inc. v. Superior Court*,
739 F.2d 466 (9th Cir. 1984) .........................................................................22

*Griggs v. Pace American Group, Inc.*,
170 F.3d 877 (9th Cir. 1999) ...........................................................................5

*In re Excel Innovations, Inc.*,
502 F.3d 1086 (9th Cir. 2007) .......................................................................18

DOWNEY BRAND LLP

973930.3

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Silicon Graphics Inc. Securities Litigation,*
    183 F.3d 970 (9th Cir. 1999) .................................................................... 16, 17

*Jackson v. Bank of Hawaii,*
    902 F.2d 1385 (9th Cir.1990) ...............................................5, 6, 7, 9, 11, 17

*Kerstein v. Plast-O-Matic Valves, Inc.,*
    2008 WL 2942135, at *5-6 (D.N.J. 2008).................................................... 11

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997) .................................................................................... 18

*Midgett v. Tri-County Metro. Transp. Dist. of Oregon,*
    254 F.3d 846 (9th Cir. 2001) ...................................................................... 21

*Neveu v. City of Fresno,*
    392 F.Supp.2d 1159 (E.D. Cal. 2005) ......................................................... 17

*Parker v. Joe Lujan Enters., Inc.,*
    848 F.2d 118 (9th Cir.1988) ....................................................................5, 6

*State of Texas v. Seatrain Int'l, S.A.,*
    518 F.2d 175 (5th Cir. 1975) ...................................................................... 20

*Sumner Peck Ranch, Inc. v. Bureau of Reclamation,*
    823 F.Supp. 715 (E.D. Cal. 1993) ............................................................... 17

*Texaco, Inc. v. Ponsoldt,*
    939 F.2d 794 (9th Cir. 1991) ....................................................................5, 6

*United States v. Veon,*
    538 F. Supp. 237 (E.D. Cal. 1982) .............................................................. 18

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    401 U.S. 321 (1971) ...................................................................................... 7

**STATE CASES**

*Oakland Raiders v. National Football League,*
    93 Cal.App.4th 572 (2001) .......................................................................... 16

*One World Networks Integrated Technologies, Inc. v. Duitch,*
    103 Cal.App.4th 1038 (2002) ...................................................................... 23

**FEDERAL STATUTES**

29 U.S.C. § 1002(15) .......................................................................................... 13

29 U.S.C. § 1106 ................................................................................................. 14

29 U.S.C. § 1106(a) ............................................................................................ 13

DOWNEY BRAND LLP

973930.3

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

29 U.S.C. § 1109(a) ...................................................................................................16

4

**STATE STATUTES**

5

Cal. Civ. Code § 2330 ...............................................................................................15

6

Cal. Civ. Code § 2334 ...............................................................................................15

7

Cal. Civ. Code § 2338 ...............................................................................................16

8

Cal. Code Civ. Proc. § 1280 .....................................................................................23

9

**FEDERAL RULES**

10

Fed. R. Civ. Proc. 9(b) .............................................................................................15

11

Fed. R. Civ. Proc. 23.1(b)(3) ....................................................................................16

12

**OTHER AUTHORITY**

13

6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure:
   Civil 2d § 1487 (1990) ...........................................................................................7

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOWNEY BRAND LLP

973930.3

iv

OPPOSITION TO MOTION TO AMEND AND MOTION FOR INJUNCTIVE RELIEF

# I.   INTRODUCTION

Three years after initiating this action and only months away from trial, Plaintiffs have filed a motion seeking leave to amend their complaint to assert new claims against non-party Bruce Couturier and several existing Defendants.  In their cursory moving papers, Plaintiffs provide absolutely no explanation why they did not name Mr. Couturier as a party in their original Complaint, or in any of their two subsequent amended pleadings.  Although the court could deny the motion on that ground alone, other factors also dictate that result.

Significantly, Bruce Couturier would be unduly and unjustifiably prejudiced by the late amendment, which the Plaintiffs have brought in bad faith and with dilatory motive.  The existing parties have already conducted substantial discovery, retained experts, proposed trial dates, and engaged in extensive motion practice, resulting in some rulings that are potentially unfavorable to Mr. Couturier and that (by order of the court) are now "law of the case."  The late amendment would also force Mr. Couturier to shoulder the enormous amount of time and expense necessary for his counsel to become apprised of the numerous (500+) motions and rulings, discovery responses, documents, and depositions conducted during his absence, as well as the burden of propounding his own discovery and bringing dispositive motions on the eve of  trial.  The prejudice to Mr. Couturier, combined with the delay in brining the motion and the futility of the proposed amendment, easily justify denial of the motion.

Plaintiffs have also brought a motion seeking to stay arbitration proceedings between Mr. Couturier and his former employer, or alternatively, for an order allowing Plaintiff to intervene in those private proceedings.  Plaintiffs have not satisfied their burden for such extraordinary  relief.  Plaintiffs cannot show a likelihood of success on the merits because their claims against Mr. Couturier are legally untenable and because they have not submitted one shred of evidence to support their baseless allegations.  Furthermore, Plaintiffs cannot show any immediate, irreparable harm if the arbitration proceeded without their joinder because a final award would not preclude Plaintiffs from brining their ERISA and other damages claims in another venue.  Therefore, since Plaintiffs have not met their burden, and since the balance of the hardships favors Mr. Couturier, the court should deny the motion for preliminary relief.

973930.3

1

## II.   BACKGROUND

### A.   General Background

Defendant Noll Manufacturing Company and its successor Defendant The Employee Ownership Holding Company ("TEOHC" or the "Company") have been manufacturing galvanized sheet metal products since 1942.  (*See* Doc. # 430.)  In or about 1977, the Company established an Employee Stock Ownership Plan ("ESOP"), a defined contribution pension plan that allows employees to acquire stock in the Company.  (*Id.*)  Over time, the ESOP came to own 100% of the outstanding shares in the Company.  (*Id.*)

Bruce Couturier began employment at the Company in 1988 as a plant manager.  In 2003, he was promoted to general manager, and in 2004, to senior vice-president of the Company.  Mr. Couturier remained in that position until the Company was sold in April 2007 for approximately $60,000,000, at which time his employment was terminated involuntarily, without cause.

During his employment, Bruce Couturier, like other management employees, executed several agreements with the Company, including Executive Employment Agreements ("EEAs") and Incentive Stock Option Agreements ("ISOs") in 2004 and 2005.  (*See* Doc. # 483 at Ex. 2.) The EEAs between Bruce Couturier and the Company require the parties to arbitrate disputes arising out of the agreements, and require such arbitration to take place within sixty (60) days after either party has requested the appointment of an arbitrator.  (*See id.*).

### B.   The Federal Action

More than three years ago, on October 1, 2005, Plaintiffs Gregory Johnson, William Rodwell and Edward Rangel filed a Complaint for violation of ERISA against Defendants Clair Couturier, David Johanson, Robert Eddy, all of whom are former officers/directors/fiduciaries of the Company or ESOP (the "Individual Defendants").  (Doc. # 1.)  The Complaint does not mention Bruce Couturier or assert any causes of action against him.  (*Id.*)

Plaintiffs have sought leave to amend their pleading on at least two occasions, first on May 31, 2006, (Doc. # 28), and later on November 15, 2006, (Doc. # 114).[2]  The court partially

---

[2]  Plaintiffs have also moved to file two supplemental complaints, once on August 18, 2008 (Doc. # 322), and most recently on November 24, 2008 (Doc. #483), the subject of this motion.

DOWNEY BRAND LLP

1   granted the first motion, allowing Plaintiff to file an amended pleading on October 27, 2006,

2   which added new Plaintiff Kelly Morrell and a nominal Defendant.  (*See* Doc. # 103, 131.)  The

3   court also granted the second motion to amend, allowing Plaintiffs to file another amended

4   pleading on April 9, 2007. (Doc. # 150.)  The Amended Complaint added several new parties, and

5   in addition to the existing ERISA claim, added two new "double derivative" claims by Plaintiff

6   Morrell for breach of fiduciary duty and professional malpractice.  (Doc. # 233.)  Like its

7   predecessors, the amended pleading does not assert any causes of action against Bruce Couturier.

8   **C.    The Arbitration Proceedings**

9       Once his employment with the Company ended, Bruce Couturier requested amounts due

10  under his EEAs and ISOs.  The Company did not dispute that Bruce Couturier was entitled to

11  certain sums under these contacts, but disagreed with Mr. Couturier about the amount owing.

12  The parties were not able to resolve their dispute informally.  Accordingly, on February 7, 2008,

13  Bruce Couturier made a demand on Company for arbitration under the 2004 ISO and 2004 EEA

14  to recover amounts due under his contracts, including his severance pay, the value of his incentive

15  stock options, and payment for his medical benefits.  (K. Seibert Decl. ¶ 4.)

16      The parties selected an Arbitrator, the Honorable Richard Gilbert (Retired), who set the

17  arbitration for July 9, 2008.  However, just days before the arbitration was scheduled to begin, the

18  Company told the Arbitrator that it could not properly present its case without a share valuation

19  completed.  The Company represented that this valuation would be completed in approximately

20  one month.  Based on this representation, and since both sides wanted this valuation to be

21  available for the arbitration, the Arbitrator granted a limited postponement and indicated that the

22  arbitration would proceed on either July 22, 2008, or August 5, 2008.  (*Id.* ¶ 5.)

23      As the second set of arbitration dates approached, the Company once again requested a

24  continuance.  At the time of the second postponement request in late July/early August, Bruce

25  Couturier agreed with the Company to continue the arbitration to December 1, 2008, on condition

26  that the Company pay him the two years severance pay to which he was undisputedly entitled, in

27  the amount of $346,500.00.  The Company agreed to this proposal, received a continuance, and

28  then breached the agreement to pay.  To date, the Company has still not paid.  (*Id.* ¶ 6.)

DOWNEY BRAND LLP

973930.3

OPPOSITION TO MOTION TO AMEND AND MOTION FOR INJUNCTIVE RELIEF

1    On October 2, 2008, Plaintiffs filed an application to intervene in the private arbitration

2   proceedings between Bruce Couturier and the Company, and shortly thereafter informed the

3   Arbitrator that if they were allowed to join in the arbitration, they would need an extended

4   continuance of the arbitration date.  Bruce Couturier opposed the application and additionally

5   asked the Arbitrator to compel payment on the outstanding $346,500.00 that the Company had

6   previously agreed to pay Mr. Couturier.  The Arbitrator denied the motion to intervene and

7   ordered the Company to pay the $346,500.00.  (*Id.* ¶ 7.)

8    On November 20, 2008, the Company filed a request with the Arbitrator to temporarily

9   stay arbitration proceedings on the grounds that Plaintiffs would be filing a complaint in this

10   federal court against Bruce Couturier and moving for a stay of the arbitration, or alternatively, an

11   order allowing Plaintiffs to intervene in the arbitration.  The Arbitrator granted the request,

12   delaying the arbitration until this court rules on these filings.  (*Id.* ¶ 9.)

13   **III.   PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND THEIR
         COMPLAINT TO ASSER CLAIMS AGAINST BRUCE COUTURIER**

14

15    On November 24, 2008, Plaintiffs moved to file a Supplemental Amended Complaint that

16   would join non-party Bruce Couturier in this action and assert claims against him for violation of

17   ERISA and breach of fiduciary duty.  (Doc. # 483.)  The Supplemental Complaint alleges that

18   Mr. Couturier owed fiduciary duties to ESOP, which he breached in 2005 by executing the

19   Indemnification Agreements and Mutual General Releases ("Indemnification Agreements") and

20   failing to object to the Company buy-out.  (*See id.* ¶ 48.)

21    The Supplemental Complaint also adds new allegations/claims against the Individual

22   Defendants.  (Doc. # 483.)  The new pleading alleges that the Individual Defendants (1) breached

23   ERISA fiduciary duties and violated the ERISA "prohibited transaction" provisions by approving

24   the EEAs and ISOs to Bruce Couturier, and (2) breached corporate fiduciary duties by (a)

25   approving the ISOs to Bruce Couturier, (b) approving the severance package in the EEAs to Mr.

26   Couturier, (c) using the 2005 ISO and 2005 as an "inducement" for Bruce Couturier and another

27   executive, Mark Comfort, to approve the Indemnification Agreements in 2005.  (*Id.* at ¶¶ 46, 64.)

28   / / /

DOWNEY BRAND LLP

973930.3

4

**A.      Legal Standard**

Under Federal Rule of Civil Procedure 15(a)(2), parties may amend their pleading by leave of court or by written consent of the adverse party.  Although the district courts are to interpret this rule with liberality, leave to amend still should not to be granted "automatically." *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.1990).  "A trial court may deny . . . a motion [to amend] if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit." *Id.* (citation omitted).  The trial court may also deny such a motion based on bad faith or dilatory motive by the movant, *Foman v. Davis*, 371 U.S. 178, 182 (1962), or based on undue delay in seeking leave to amend, *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991).  *Accord AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir 2006).

The denial of a motion for leave to amend is reviewed under the deferential abuse of discretion standard.  *Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 879 (9th Cir. 1999) (citations omitted).  The trial court has "particularly broad" discretion to deny such a motion "where, as here, a plaintiff previously has been granted leave to amend." *Id.* (citations omitted); *accord Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

**B.      Plaintiffs Unduly Delayed In Seeking Leave to Amend**

The court should deny the motion to amend because Plaintiffs unduly and unjustifiably delayed in seeking leave to file their Supplemental Complaint.  *See Texaco*, 939 F.2d at 798 ("Undue delay is a valid reason for denying leave to amend."); *Parker v. Joe Lujan Enters., Inc.*, 848 F.2d 118, 121 (9th Cir.1988) (affirming denial of motion for leave to amend because of undue delay).  As noted earlier, Plaintiffs initiated this action more than three years ago, and since that time have sought leave to amend on two separate occasions, resulting in two amended pleadings.  (Doc. # 1, 103, 150.)  However, neither their original pleading nor the two subsequent pleadings have named Bruce Couturier as a party.  (*See id.*)

Plaintiffs have provided absolutely no explanation why they did not name Bruce Couturier as a party in their original Complaint, First Amended Complaint, or Second Amended Complaint. (*See* Doc. # 483 at 2-3.)  Indeed, Plaintiffs do not contend that their proposed Supplemental

DOWNEY BRAND LLP

1   Complaint raises new facts, theories, or claims that they only recently learned through discovery.

2   *See Jackson*, 902 F.2d at 1387 (holding that district court properly denied leave to amend because

3   plaintiffs could cite to no new facts or theories learned through the course of discovery to justify

4   their belated request for leave to amend).  On the contrary, Plaintiffs assert that the allegations

5   and claims in their Supplemental Complaint and those in their current, operative Complaint all

6   "derive from a common nucleus of facts."  (Doc. # 483 at 3:3-11.)  Given this so-called similarity,

7   Plaintiffs should have asserted their claims against Bruce Couturier in their original Complaint, or

8   at the very minimum, in their two subsequent amended pleadings.  *See Jackson*, 902 F.2d at 1387

9   (holding that district court properly denied leave to amend because the plaintiffs "knew or should

10  have known the facts and theories raised by the amendment in the original pleading").

11          Indeed, the thrust of the complaint against Bruce Couturier is that he improperly

12  consented to the Indemnity Agreements in favor of the Individual Defendants.  Since the parties

13  have conducted voluminous discovery *and* extensively litigated the validity of these Indemnity

14  Agreements, Plaintiffs were clearly aware that Mr. Bruce Couturier executed these documents,

15  yet they delayed bringing any action against him for years.

16          In their Motion, Plaintiffs indicate they only recently sought leave to amend because the

17  Arbitrator refused to let them intervene in the private arbitration between Mr. Couturier and the

18  Company.  (Doc. # 483 at 2:13-17.)  But whether or not Plaintiffs could intervene as *Defendants*

19  in that private arbitration has absolutely no bearing on *when* they should have plead their

20  *affirmative* claims for relief against Bruce Couturier as *Plaintiffs* in this federal court.

21          Simply put, Plaintiffs chose to wait more than three years – *a patently unreasonable*

22  *amount of time* – to seek leave to file their Supplemental Complaint.  *See AmerisourceBergen*,

23  465 F.3d at 953 (finding a fifteen month delay unreasonable in seeking leave to amend); *Parker*,

24  848 F.2d at 121 (finding an eleven month delay unreasonable in seeking leave to amend); *Texaco*,

25  939 F.2d at 799 (finding an eight month delay unreasonable in seeking leave to amend).

26  Accordingly, this court should deny their belated request to amend.

27  **C.      Bruce Couturier Would Be Unduly Prejudiced by Amendment**

28          The court should deny the motion to amend because Brue Couturier would be unduly

*DOWNEY BRAND LLP*

973930.3

6

OPPOSITION TO MOTION TO AMEND AND MOTION FOR INJUNCTIVE RELIEF

prejudiced if Plaintiffs were allowed to file their Supplemental Complaint at this late juncture. *Jackson*, 902 F.2d at 1387 (stating that "prejudice to the opposing party is the most important factor" when deciding whether to deny leave to amend) (citing *Zenith Radio Corp. v. Hazeltine Research*, *Inc*., 401 U.S. 321, 330-31 (1971) (trial court "required" to take potential prejudice into account in deciding Rule 15(a) motion); 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 1487 (1990)).  Mr. Couturier would be prejudiced in numerous ways.

For example, Mr. Couturier would be prejudiced due to the significant amount of time and expense that he and his counsel would be required to expend to simply apprise themselves of the voluminous filings in this action and the applicable rulings.  A cursory review of the docket reveals that the parties have filed numerous pleadings in this action, including motions to amend, to dismiss pleadings, to compel discovery, for protective orders, to disqualify counsel, for summary judgment and injunctive relief.  (*See e.g.* Doc. # 41, 50, 52, 74, 116, 155, 163, 195, 212, 219, 248, 260, 290, 316, 321, 337, 342, 371, 379, 402, 407, 455, 471, 479, 483, 486, 496, 507.) Indeed, as of the date of this Opposition, the parties and the court have filed more than five hundred (500) motions, pleadings, and orders, none of which Bruce Couturier has had the ability to join or oppose, and all of which would require an inordinate amount of time to review.

Bruce Couturier also would be prejudiced because, by virtue of his late joinder, he will have lost the opportunity to argue significant legal issues in this action that affect his interests, several of which have been resolved in an manner potentially unfavorable to Mr. Couturier, and which (by order of the court) are now "law of the case."  (*See e.g.* Doc. # 233 at 8-9, 17-18.) Bruce Couturier has had no opportunity to argue any of these significant legal issues over the past three years, yet if the motion for leave to amend were granted, he would be subject to rulings made during his absence, without his input.

Additionally, Bruce Couturier would be prejudiced because he has not participated in discovery over the past three years, which would place him at a significant disadvantage in this action and would and necessitate significant and costly discovery efforts before trial.  Several pleadings on the docket indicate that the parties have already completed substantial discovery over the course of the last three years, including written discovery requests, document production,

and numerous depositions. (*See e.g.* Doc. # 260, 325, 337, 442.)  For example, Status Reports filed in August 2008 indicate that several parties have been deposed already, including Plaintiff Gregory Johnson, Plaintiff Darlene Stanton, and Defendant Robert Eddy, as have been numerous non-party percipient witnesses, including Thomas McIntosh, James Roorda, David Fenkell, Mathew Donnelly, and Dan Mytels.  (Doc. # 324.)  The Status Reports also indicate that four additional depositions were scheduled to take place in September and October, including those of nonparties Dennis Locke and Anthony Matthews, and Defendants Clair Couturier and David Johanson.[3]  (Doc. # 325.)  Bruce Couturier has not had the opportunity to participate in any of these key depositions, ask questions, or interject his own objections.

The Status Reports also reflect that several parties have retained expert witnesses and have already exchanged, or are prepared to exchange, expert disclosures.  (Doc. # 325).  Additionally, the Reports indicate that Plaintiffs are prepared to commence trial in March 2009, that some Defendants prefer July 2009 or September 2009, and that other Defendants want this action to be scheduled for trial as early as possible.  (Doc. # 324, 325, 329.)  Even assuming that this court set this action for trial at the latest suggested date, the current parties would have the benefit of almost four years of preparation, while Bruce Couturier would have only nine months to catch up on three-years worth of litigation, conduct his own independent discovery (which would undoubtedly involve extensive written discovery, document review/analysis and depositions), file discovery and/or dispositive motions as appropriate, retain expert witnesses, and prepare for trial.  To make Bruce Couturier undertake such actions on the eve of trial, while Plaintiffs have already had the benefit of three years of preparation, would place Bruce Couturier at an extreme disadvantage in defending himself against their baseless accusations.

Additionally, the trial of this action will undoubtedly take significant time and expense given the breadth of the allegations in the Amended Complaint, which span over a five year time period (from 2001-2005) and focus on numerous deals and agreements.  (Doc. # 1, 233)  Bruce

---

[3]  Bruce Couturier has no idea what additional witnesses have been deposed in the four months since the parties filed their Status Reports, but even considering those depositions that have been conducted to date, Bruce Couturier would be prejudiced if Plaintiffs were granted leave to amend because Mr. Couturier has not had the opportunity to participate in the depositions of several key witnesses.

973930.3

OPPOSITION TO MOTION TO AMEND AND MOTION FOR INJUNCTIVE RELIEF

DOWNEY BRAND LLP

1   Couturier should not be forced to bear this enormous expense because the claims against him in

2   the Supplemental Complaint are much more narrow in time and scope: those claims focus on only

3   one year (2005) and on whether Mr. Couturier acted improperly by executing Indemnification

4   Agreements and not objecting to the Company buy-out.  (*See* Doc. # 483.)  Further, to subject

5   Bruce Couturier to a lengthy and costly trial in federal court would completely eviscerate the

6   provisions in his EEAs requiring speedy and quick resolution of any disputes between Mr.

7   Couturier and the Company through arbitration in sixty (60) days.

8        In short, forcing Bruce Couturier to defend himself in this federal action at trial within

9   three months, seven months or even nine months, would be unduly prejudicial since he has not

10  participated in any of the five hundred motions and pleadings filed in this litigation and has not

11  conducted any discovery (either in this action or the arbitration[4]), and since the claims asserted

12  against him are nowhere near as broad in scope and time as those against the existing Defendants

13  and would require far less time and expense at trial.  Accordingly, the court should deny the

14  motion for leave to amend.  *See Jackson*, 902 F.2d at 1387.

15  **D.**     **Plaintiffs Have Brought this Amendment in Bad Faith And With Dilatory Motive**

16       The court should deny the motion to amend because Plaintiffs have brought their

17  Supplemental Complaint in bad faith and with dilatory motive.  *See Foman*, 371 U.S. at 182

18  (stating that district court may refuse amendment for bad faith and dilatory motive).  Plaintiffs

19  have been litigating this action for over three years, conducted voluminous discovery, yet have

20  never complained that Bruce Couturier acted inappropriately while working for the Company or

21  that his EEAs and ISOs are invalid.  Instead, Plaintiffs waited until Bruce Couturier had lost his

22  job and had no source of income, and until after he had participated in arbitration for more than

23  eleven months, before they sought to prevent him from receiving severance pay, health benefits

24  and stock options that he had earned through twenty years of hard work for the Company.

25       A close inspection of the proposed Supplemental Complaint reveals that the Plaintiffs are

26  grasping at straws, trying to manufacture claims against Bruce Couturier when there are none.

27  At bottom, the only wrongdoing Plaintiffs allege Bruce Couturier engaged in was (1) executing

28

---

[4]  The parties are prohibited from conducting discovery in the arbitration.

DOWNEY BRAND LLP

1   Indemnification Agreements and Mutual General Releases in 2005, and (2) failing to object to the

2   Company buy-out transaction in 2005.  (Supp. Compl. ¶¶ 23-25, 48, 67.)  Neither of these

3   allegations have anything to do with his EEAs and ISOs, which are the subject of the arbitration.

4   Further, neither of these allegations have any factual support, as demonstrated by the fact that

5   Plaintiffs failed to submit a single shred of evidence to support their request for injunctive relief

6   for stay of the arbitration/intervention, and by the fact that a Department of Labor investigation

7   into the Company, which has spawned related litigation involving numerous former employees

8   and fiduciaries, has not implicated Mr. Couturier in any wrongdoing.  (Doc. # 496, Ex. 7.)

9        In fact, Plaintiffs are so desperate to drag Bruce Couturier into this federal litigation that

10  they included patently false information in their Supplemental Complaint in an effort to convince

11  this court that their derivative claims and requests for injunctive relief are proper.  Specifically, in

12  their second supplemental claim for breach of fiduciary duty, which Plaintiffs Morrell and

13  Stanton have brought on behalf of the Company, Plaintiffs claimed they did not make a demand

14  on the Company board (a prerequisite to any derivative claim) because "[t]he members of the

15  Board[] upon whom the demand would be served actively participated or acquiesced in the

16  behavior complained of and are named as Defendants herein."  (Supp. Compl. ¶¶ 60-61.)  Other

17  pleadings filed in this action flatly contradict this conclusory allegation.

18       According to federal court records, more than eight months ago, the Company appointed a

19  non-party as its sole director: "As of April 18, 2008, the Companies have been under the direction

20  of a single-member, independent Board, consisting of Director C. Jackson Pfeffer."  (Doc. # 329.)

21  Since the single-member, independent Board, is not a party to the litigation, there is simply no

22  valid basis for Plaintiffs' failure to make a demand on the Company before attempting to bring a

23  derivative action.  Plaintiffs undoubtedly knew this information when drafting their Supplemental

24  Complaint because this fact was discussed in the context of their request to intervene in the

25  arbitration.  (Seibert Decl. ¶ 8.)  Given that Plaintiffs knowingly included false information in

26  their proposed pleading, this court should ask:  what other false information have Plaintiffs

27  included in their Supplemental Complaint?  Furthermore, what lengths will Plaintiffs take to drag

28  Bruce Couturier into this federal litigation?

973930.3

10

DOWNEY BRAND LLP

1    In light of the false allegations in their Supplemental Complaint, and the lengthy three

2    year delay in bringing suit, this court should find that Plaintiffs have acted bad faith and with

3    dilatory motive and deny the motion to amend.

4    **E.    The Proposed Amendment Would Be Futile**

5    The court should also deny the motion to amend because amendment would be futile. *See*

6    *Jackson*, 902 F.2d at 1387 (citing futility of amendment as ground for denying leave to amend).

7    Both of the claims Plaintiffs propose to assert against Bruce Couturier suffer from fatal defects.

8    *1.    The ERISA Claim Is Untenable*

9    The first proposed claim alleges that Bruce Couturier breached fiduciary duties to ESOP

10   by executing the Indemnification Agreements and failing to object to the buy-out transaction.

11   (Doc. # 483 at 11 ¶ 48.)  Plaintiffs allege that Mr. Couturier owed these fiduciary duties to ESOP

12   by virtue of his appointment to the Company Board in 2005. (*Id.* ¶ 47.)  However, company

13   directors are not automatically ESOP fiduciaries merely by holding their board positions. *See*

14   *Batchelor v. Oak Hill Medical Group*, 870 F.2d 1446, 1449 (9th Cir. Cir. 1989).  Rather, for

15   directors to owe fiduciary duties, they must have responsibility for one or more of the functions

16   enumerated in section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).  *See Batchelor v. Oak Hill*

17   *Medical Group*, 870 F.2d 1446, 1449 (9th Cir. Cir. 1989).  As one district court aptly explained in

18   *Kerstein v. Plast-O-Matic Valves, Inc.*, 2008 WL 2942135, at *5-6 (D.N.J. 2008):

> Corporate officers are not automatically fiduciaries merely because
> they possess a title in the corporation that may have control or
> authority over ESOP assets.  [citations]  And even when a corporate
> officer undertakes business decisions that have a collateral affect on
> the assets of the corporation, ERISA does not require that he
> operate solely in the interest of the plan.  [citations]  Courts hold
> that fiduciary status does not extend to every action taken by a
> fiduciary and that only when their actions can be characterized as
> discretionary acts of plan management or assets do fiduciary
> obligations attach.  [citations]

25   Plaintiffs do not allege that Bruce Couturier had responsibility for any of the functions

26   enumerated in section 3(21)(A) of ERISA. (*See* Doc. # 483, at 11, ¶ 48.)  Although Plaintiffs

27   claim "Bruce Couturier was an ESOP fiduciary with respect to appointing and removing the

28   ESOP Trustees and monitoring their activities," significantly, Plaintiffs do not allege that Mr.

DOWNEY BRAND LLP

973930.3

11

1    Couturier had "discretionary authority or discretionary control" to actually select and retain the

2    ESOP fiduciary.  (*Id.*)  Without any allegation that he had this specific responsibility, Plaintiffs

3    cannot allege that Mr. Couturier owed the ESOP a fiduciary duty.  *See Batchelor*, 870 F.2d at

4    1449.[5]  **In fact, Plaintiffs cannot make this allegation, because their prior pleadings**

5    **demonstrate that Mr. Couturier never had this responsibility.**  In their original Complaint,

6    Plaintiffs alleged that Defendants David Johanson and Clair Couturier exercised control over the

7    appointment and retention of the ESOP fiduciary.  (Doc. # 1 at ¶¶ 73-75 (alleging "Johanson

8    caused [Clair] Couturier to step down as ESOP trustee and Johanson and [Clair] Couturier

9    appointed Eddy to replace Couturier as an ESOP fiduciary….").)  Plaintiffs should not be allowed

10   to assert claims that contradict their original allegations.[6]

11       Even assuming arguendo that Bruce Couturier had a fiduciary duty with respect to the

12   selection and retention of the ESOP fiduciary, Plaintiffs have not alleged that Mr. Couturier

13   breached these two specific duties.  (Doc. # 483 ¶ 48.)  Instead, Plaintiffs allege that Mr.

14   Couturier breached fiduciary duties to ESOP by (1) executing the Indemnification Agreements

15   and (2) not objecting to the buyout transaction.  (*Id.*)  Neither of these allegations pertain to the

16   selection or retention of the ESOP fiduciary, or for that matter, any of the other fiduciary

17   functions enumerated in section 3(21)(A) of ERISA.  (*See id.*)  Therefore, Plaintiffs have not

18   alleged a viable ERISA breach of fiduciary duty claim against Mr. Couturier.  *See Batchelor*, 870

19   F.2d at 1449 (emphasizing that even when board members exercise discretionary authority or

20   discretionary control over the selection and retention of plan fiduciaries, that "their responsibility,

21   and, consequently, their liability, is limited to the selection and retention of fiduciaries").

22       Plaintiffs also assert the Individual Defendants (but not Bruce Couturier) breached their

---

[5]  The Ninth Circuit has explained:  "the board of directors may be *responsible* for the selection and retention of plan fiduciaries.  *In such a case*, members of the board of directors exercise 'discretionary authority or discretionary control respecting management of such plan' and are, therefore, fiduciaries with respect to the plan.  However, their responsibility, and, consequently, their liability, is limited to the selection and retention of fiduciaries."  *Batchelor*, 870 F.2d at 1448-1449 (citation omitted) (emphasis added).

[6]  Plaintiffs have not alleged that Bruce Couturier participated in the selection of the ESOP fiduciary or that he even knowingly acquiesced in that selection.  (*See* Doc. # 483 at ¶ 48.)  Even if Plaintiffs included such allegations, they still could not assert an ERISA breach of fiduciary duty claim against Mr. Couturier based solely on that participation.  *See Batchelor*, 870 F.2d at 1448 ("A non-fiduciary does not subject itself to liability simply by participating in a breach of trust by fiduciaries.") (citation omitted).

973930.3                                              12

DOWNEY BRAND LLP

1   fiduciary duties and authorized "prohibited transactions" under ERISA by approving his EEAs

2   and ISOs in 2003, 2004 and 2005.  (Doc. # 483 ¶¶ 10, 42-46.)  In conclusory language, Plaintiffs

3   assert that these EEAs and ISOs constitute "prohibited transactions" under ERISA because these

4   employment and stock option agreements are allegedly between a "plan" and a "party in interest."

5   (*See id.* ¶¶ 42-44 (citing 29 U.S.C. § 1106).  Despite these allegations, an inspection of their

6   pleading reveals that Plaintiffs have not and cannot allege facts demonstrating: (1) Bruce

7   Couturier qualifies as an ERISA "party of interest;" (2) the EEAs and ISOs constitute "prohibited

8   transactions" under ERISA, and (3) the EEAs and ISOs involve "plan assets."

9          First, Plaintiffs allege that Bruce Couturier qualifies as a "party in interest" based solely

10  on his being the brother of Clair Couturier, an alleged ESOP fiduciary.  (Doc. # 483 ¶¶ 2, 43.)

11  Although ERISA provides that a "relatives" are "parties in interest," ERISA defines "relative" in

12  a manner that specifically excludes siblings:  "The term 'relative' means a spouse, ancestor

13  [parent], lineal descendant [child], or spouse of a lineal descendant."  *See* 29 U.S.C. § 1002(15).

14  Therefore, since Bruce and Clair Couturier are brothers, not "relatives" as that term is defined in

15  ERISA, Bruce does not qualify as a "party in interest."  *See id.*

16         Second, even if Bruce Couturier were a party in interest, Plaintiffs have not alleged any

17  acts that qualify as "prohibited transactions" under section 406 of ERISA.  (*See* Doc. # 483 ¶ 42.)

18  In a gross overstatement of section 406, Plaintiffs take the broad and unsupportable position that

19  <u>any and all</u> "transactions" between a "plan" and a "party in interest" are prohibited unless one of

20  the statutory exemptions apply.  (Doc. # 483 ¶ 42.)  However, section 406 does not prohibit <u>any</u>

21  <u>and all</u> transactions between a "party in interest" and a "plan," but rather prohibits only limited

22  types of transactions, none of which are applicable here.  *See* 29 U.S.C. § 1106(a).

23         Specifically, ERISA section 406 prohibits: (i) certain property sales, exchanges or leases;

24  (ii) certain loans or extensions of credit; (iii) the furnishing of goods, services or facilities

25  between the plan and the party in interest; (iv) the transfer to, or use by or for the benefit of, a

26  party in interest, of any assets of the plan; and (v) the plans' acquisition of certain employer

27  property and employer securities.  29 U.S.C. § 1106(a).  Plaintiffs have not included allegations

28  in their Supplemental Complaint suggesting that Bruce Couturier or his EEAs and ISOs fall into

973930.3

13

DOWNEY BRAND LLP

1   any one of these five categories, and clearly they do not.  (*See* Doc. # 483.)  Bruce Couturier

2   provided services to the Company, not the ESOP, in his capacity as a Company employee.  He

3   did not buy or sell property to or from the ESOP, nor did he enter into any loan or credit

4   arrangement with the ESOP.  Additionally, no ESOP assets were used for his own benefit.

5   Therefore, the EEAs and ISOs do not constitute "prohibited transactions" under ERISA.

6          Finally, Plaintiffs have not and cannot allege the EEAs and ISOs involve "plan assets."

7   *See* 29 U.S.C. § 1106.  In their Supplemental Complaint, Plaintiffs allege that the EEAs and ISOs,

8   (which Bruce Couturier received in consideration for his years of work for the Company), violate

9   ERISA because these agreements constitute unreasonable and excessive executive compensation.

10  (Doc. # 483, at ¶¶ 11, 18, 30, 46.)  However, claims of excessive executive compensation do not

11  involve plan assets, but rather the assets of the corporation.  *See, e.g., Eckelkamp v. Beste*, 201

12  F.Supp.2d 1012, 1022-23 (E.D. Mo. 2002), *aff'd* 315 F.3d 863 (8th Cir. 2002) ("An employer's

13  discretion in determining salaries is a business judgment which does not involve the

14  administration of an ERISA plan or the investment of an ERISA plan's assets.  Such a decision

15  may ultimately affect a plan indirectly but it does not implicate fiduciary concerns regarding plan

16  administration or assets. . . . Thus, the Executive Defendants were not acting in their fiduciary

17  capacities when compensation levels were determined for themselves and the other employees of

18  [the Company].");  *Bendaoud v. Hodgson*, 2008 U.S. Dist LEXIS 72788, at *52-54 (D. Mass.

19  Sept. 24, 2008) ("setting (and receiving) executive compensation – even improper compensation

20  – is a classically corporate act.  It falls outside the purview of ERISA because it does not directly

21  involve 'the management or disposition of [the plan's] assets.' 29 U.S.C. § 1002(21)(A)(I). . . . A

22  persuasive analogy is poor financial decision making by a person who is both a corporate officer

23  and an ERISA fiduciary. Even if the executive's poor corporate strategic decisions render

24  worthless the company's stock, thereby harming the value of an employee's ERISA plan

25  holdings, those decisions do not constitute a breach of his ERISA fiduciary duties.") (citations

26  omitted).  Therefore, for this additional reason, Plaintiffs cannot state a viable claim against Bruce

27  Couturier under ERISA.

28  / / /

DOWNEY BRAND LLP

### 2.     The "Double Derivative" Claim for Breach of Fiduciary Duty Also Fails

The "double derivative" claim Plaintiffs have proposed to bring on behalf of the Company for breach of fiduciary duty also suffers from significant legal defects.  As a preliminary matter, the Supplemental Complaint does not allege that Bruce Couturier violated any specific fiduciary duties himself.  (*See* Doc. # 483, at 15, ¶¶ 64-66.)  Rather, all of the alleged breaches concern actions supposedly taken by the *Individual Defendants* with respect to their approval of the EEAs and ISOs for Mr. Couturier.  (*Id.*)  Therefore, the Supplemental Complaint fails to state a fiduciary duty claim against Mr. Couturier individually.[7]

Perhaps read very generously and with reference to other allegations in the Complaint, the pleading could be interpreted as alleging that Bruce Couturier breached unspecified fiduciary duties by signing the Indemnification Agreements.  (*See* Doc. # 483 15 ¶ 67.)  But even if the court gave Plaintiffs the benefit of the doubt by reading the Complaint in this manner, Plaintiffs have sought an  improper remedy for this alleged infraction by Mr. Couturier:  invalidation of his EEAs and ISOs and an injunction prohibiting the Company from making may payment to Mr. Couturier under these agreements.  (Doc. # 483, at 13, ¶ 68.)  Plaintiffs cannot claim on one hand that Mr. Couturier breached fiduciary duties with respect to the Indemnification Agreements, and on the other, seek the remedy of invaliding *different and distinct contracts*, his EEAs and ISOs.  Simply put, Plaintiffs have not alleged that Mr. Couturier engaged in any breaches of fiduciary duty that would allow this court to invalidate or stop payment on those EEAs and ISOs.

Nor can Plaintiffs seek to invalidate the EEAs and ISOs or prevent payment on those contracts on the grounds that the Company officers/directors breached their duties by approving these agreements.  To hold otherwise would improperly allow a company to escape contractual obligations with its employees (who rely on their contracts in agreeing to work for that company) whenever its officers, directors or other agents allegedly breached a duty to the Company by approving corporate contracts.  *See generally* Cal. Civ. Code §§ 2330, 2334 (providing that a

---

[7]  Although Plaintiffs have labeled their second claim "breach of fiduciary duty/fraud," their claim does not contain any particularized fraud allegations, as required by Federal Rule 9(b).  In fact, the only mention of "fraud" appears in the title of the claim and in two conclusory paragraphs stating that the EEAs, ISOs and Indemnification Agreements "were a fraud upon the corporation and their shareholders….."  (Doc. # 483 at ¶¶ 66-67.)

DOWNEY BRAND LLP

1   principal is bound by acts of his agents); *id.* § 2338 (stating the "principal is responsible to third

2   persons for the negligence of his agent in the transaction of the business of the agency, including

3   wrongful acts committed by such agent in and as a part of the transaction of such business, and

4   for his willful omission to fulfill the obligations of the principal").

5          Under such circumstances, the Company (and therefore the Plaintiffs) have only one

6   option: seek monetary damages from the Individual Defendants who breached their duties, not

7   unwinding employment agreements after Bruce Couturier has already performed his contractual

8   obligations by providing twenty years of service to the Company.  *See Eckelkamp*, 201 F.Supp.2d

9   at 1021 (explaining that when "a fiduciary fails to meet the standards of ERISA . . . s/he may be

10  held personally liable for any losses to the plan resulting from the breach") (citing ERISA section

11  409(a), 29 U.S.C. § 1109(a)).  For that reason, and contrary to the assertions Plaintiffs make in

12  their motion to amend, Bruce Couturier need not be joined as party in this action for Plaintiffs to

13  be accorded "complete relief," because all necessary parties (the Individual Defendants) are

14  already before the court.

15         The "double derivate claim" also fails for another fundamental reason.  Before brining a

16  derivative claim on behalf of a corporation, a plaintiff must either make a demand on the board of

17  directors, or plead with particularity the reasons why such a demand would be futile.  *See In re*

18  *Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 989 (9th Cir. 1999) (citing Fed. R. Civ.

19  Proc. 23.1(b)(3)).  Plaintiffs admit they have  not made a demand on the Company board, but

20  claim that such a demand would be futile.  (Doc. # 483 ¶ 460.)  Under such circumstances,

21  Plaintiffs "must allege particularized facts creating a reasonable doubt that (1) the directors are

22  disinterested and independent, or (2) the challenged transaction was otherwise the product of a

23  valid exercise of business judgment."  *Id.* (citing Delaware law); *Oakland Raiders v. National*

24  *Football League*, 93 Cal.App.4th 572, 587 (2001) (articulating same test under California law).

25         Plaintiffs attempt to overcome this hurdle by a claiming that "[t]he members of the Boards

26  upon whom the demand would be served actively participated or acquiesced in the behavior

27  complained of, and are named as Defendants herein."  (Doc. # 483, at 13, ¶ 61.)  Not true.

28  According to judicially noticeable court records, the Company appointed a non-party as its sole

DOWNEY BRAND LLP

973930.3

16

1   director more than eight months ago: "As of April 18, 2008, the Companies have been under the

2   direction of a single-member, independent Board, consisting of Director C. Jackson Pfeffer."[8]

3   (Doc. # 329.)  Accordingly, the court should reject the conclusory allegations in the Supplemental

4   Complaint that the Individual Defendants and Company board of directors are one-in-the-same.

5   *Sumner Peck Ranch, Inc. v. Bureau of Reclamation*, 823 F.Supp. 715, 719-20 (E.D. Cal. 1993)

6   (explaining that a "court need not accept as true allegations that contradict facts which may be

7   judicially noticed," such as "papers filed with the court") (citation omitted); *accord Neveu v. City*

8   *of Fresno*, 392 F.Supp.2d 1159, 1168 (E.D. Cal. 2005).  Therefore, since Plaintiffs cannot plead

9   the futility of a demand, their breach of fiduciary duty claim also fails as a matter of law.  *See In*

10   *re Silicon Graphics*, 183 F.3d at 989.

11       In sum, Plaintiffs have not alleged viable ERISA or breach of fiduciary duty claims

12   against Bruce Couturier.[9]  Accordingly, this Court should deny their motion to amend on the

13   grounds that such amendment would be futile.  *See Jackson*, 902 F.2d at 1387 (citing futility of

14   amendment as ground for denying leave to amend).

### IV.   THE COURT SHOULD NOT STAY THE ARBITRATION OR ALLOW PLAINTIFFS TO INTERVENE

17       On November 24, 2008, Plaintiffs filed a motion requesting temporary and preliminary

18   and injunctive relief: (1) staying the arbitration proceedings between Bruce Couturier and the

19   Company, (2) staying payment of $346,500 to Bruce Couturier as ordered by the arbitrator, (3)

20   enjoining the Company from making any payments to Bruce Couturier pending disposition of this

21   case.  (Doc. # 483.)  Plaintiffs, however, did not file a legal memorandum or proposed order in

22   support of their request for injunctive relief.  (*See id.* at 4:3-5.)  Two days later, on November 26,

23   2008, Plaintiffs filed a memorandum asking the court to: (1) stay the arbitration proceedings

24   between Bruce Couturier and the Company, or alternatively, (2) allow Plaintiffs to intervene in

25   the arbitration proceedings.[10]  (Doc. # 496.)

---

[8]  Bruce Couturier requests that this court take judicial notice of the Status Report at Doc. # 329.
[9]  Bruce Couturier does not address all the deficiencies in the Supplemental Complaint herein, and should this court grant the motion to amend, Mr. Couturier reserves the right to challenge the pleadings in these and other respects.
[10]  Although their motion to stay would have a direct impact on Bruce Couturier, Plaintiffs did not serve their motion on him or his attorneys.   Consequently, Couturier did not learn about the motions until the beginning of December,

DOWNEY BRAND LLP

**A.    Legal Standard**

As the movants, Plaintiffs bear the burden of proving their requested preliminary injunction is warranted.  *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007); *United States v. Veon*, 538 F. Supp. 237, 246-47 (E.D. Cal. 1982). "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant by a clear showing carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis included) (omitting internal citations).

To satisfy their burden, Plaintiffs "must show a combination of either (a) probable success on the merits and irreparable injury or (2) serious questions are raised and the balance of hardships tips sharply in [their] favor." *American Passage Media Corp. v. Cass Comm'n, Inc.*, 750 F.2d 1470, 1472 (9th Cir. 1985) (citation omitted).  The Ninth Circuit has explained that these are not two separate tests, but rather extremes of a continuum.  *See Benda v. Grand Lodge of the Int'l Ass'n of Machinists*, 584 F.2d 308, 315 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937 (1979).  As a result, "the degree of irreparable harm required for a preliminary injunction increases as the probability of success on the merits decreases, and vice versa." *Earth Island Institute v. United States National Forest Service*, 351 F.3d 1291, 1300 (9th Cir. 2003) (citations omitted).  Under either formulation of the test, however, Plaintiffs must demonstrate that interim injunctive relief is necessary to prevent irreparable harm that would otherwise occur.  *See Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citation omitted).

**B.    Plaintiffs Have Not Demonstrated A Likelihood of Success On the Merits**

The court should refuse to grant the requested injunctive relief because Plaintiffs cannot demonstrate a likelihood of success on either proposed claim in their Supplemental Complaint. Preliminarily, both their ERISA and breach of fiduciary duty claims fail to allege cognizable legal theories.  (*See* Part III.E (discussing the legal deficiencies in both claims).)  Additionally, Plaintiffs have not alleged Bruce Couturier engaged in any wrongdoing with respect to his EEAs and ISOs, the subject of the arbitration.  The <u>only</u> wrongdoing Plaintiffs allege Mr. Couturier engaged in was (1) executing Indemnification Agreements and (2) failing to object to the

---

when in the context of the arbitration proceedings, counsel for the Company alerted Bruce Couturier to the filings.

973930.3

18

DOWNEY BRAND LLP

1  Company buy-out transaction. (Supp. Compl. ¶¶ 23-25, 48, 67.)  Neither of these allegations

2  have anything to do with his personal EEAs and ISOs, and therefore provide no legal basis for the

3  court to stay or otherwise disrupt the arbitration proceedings.  Indeed, for the court to stay those

4  proceedings, preventing Bruce Couturier from recovering his severance and health care benefits,

5  when Plaintiffs have not alleged Bruce Couturier engaged in any wrongdoing with respect to

6  those contracts, would be manifestly unfair.

7       True, Plaintiffs have alleged that the Individual Defendants acted improperly by

8  approving the EEAs and ISOs. (*See* Supp. Compl. ¶¶ 46, 64.)  However, even if the court looked

9  to the allegations against the Individual Defendants, the Supplemental Complaint still does not

10  provide any basis for the court to invalidate the EEAs and ISOs. (*See* Part III.E.)  Plaintiffs

11  cannot utilize ERISA to acquire such relief because they cannot allege or prove that the EEAs and

12  ISOs constitute "prohibited transactions" between the ESOP and a "party in interest." (*Id.*)

13  Plaintiffs cannot rely on their breach of fiduciary duty claim because they have not made a

14  demand on the corporation, and more importantly, they cannot invalidate the EEAs and ISOs

15  based on alleged fiduciary breaches by the Individual Defendants, as opposed to Mr. Couturier.

16  (*Id.*)

17       At the very most, all Plaintiffs have alleged are claims against the Individual Defendants

18  for damages for breach of their ERISA and corporate duties, and a state law claim against Bruce

19  Couturier for damages for signing the Indemnification Agreements.  Plaintiffs have not alleged

20  any claims that would give this court a basis for invalidating the EEAs and ISOs or for the

21  extraordinary injunctive relief Plaintiffs request here.

22       Additionally, despite the fact that Plaintiffs have had three years to conduct discovery in

23  this action, they have not presented a single shred of evidence to support their allegations.

24  Instead, Plaintiffs rely exclusively on the broad and unsupported allegations in their unverified

25  Supplemental Complaint, which do not satisfy their burden of producing credible and admissible

26  evidence to support their claims. *See Doster, Inc. v. Internet Corp. for Assigned Names and*

27  *Numbers*, 296 F.Supp.2d 1159, 1163-64 (C.D. Cal. 2003) (denying motion for preliminary

28  injunction where plaintiffs failed to present "credible and admissible evidence" supporting their

DOWNEY BRAND LLP

973930.3                                          19

1   claims).  Without some actual, evidence that Bruce Couturier engaged in some palpable

2   wrongdoing, this court should refuse to enjoin the arbitration or allow Plaintiffs to interfere in

3   those proceedings.  *See id.*  Therefore, because Plaintiffs have not demonstrated a likelihood of

4   success on their claims, the court should deny their request for preliminary injunctive relief.  *See*

5   *State of Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 180 (5th Cir. 1975) ("[O]ne cannot obtain a

6   preliminary injunction if he clearly will not prevail on the merits.").

7   **C.     Plaintiffs Have Not Demonstrated that They Would Be Irreparably Harmed If the**
        **Court Does Not Grant Preliminary Relief**

8

9            Plaintiffs contend they would be irreparably injured unless the court allows them to

10  intervene in the arbitration on behalf of the Company as its "true corporate representatives."[11]

11  (Doc. # 496 at 4.)  Plaintiffs do not explain, however, why they should be permitted to interfere in

12  private arbitration as "representatives" of the Company, when that Company has already been

13  joined and can more than adequately represent its own interests with the help of its *independent*

14  director and its *independent* legal counsel.  Bruce Couturier should not be forced to defend his

15  contracts against <u>both</u> the Company <u>and</u> its representatives in the arbitration when the Company

16  can represent itself, without any perceived conflict.[12]

17           Plaintiffs argue they would be irreparably injured unless the court stays the arbitration

18  because the final award "may" prejudice their rights "to challenge the validity of the award" and

19  cause them irreparable harm.  (Doc. # 496 at 3.)  However, this court has already rejected a

20  similar argument.  Specifically, in the context of a separate motion for preliminary injunctive

21  relief, in which Plaintiffs sought to enjoin the Company from advancing legal fees to the

22  Individual Defendants under certain indemnification agreements, this court considered what

23

24  [11]  Plaintiffs claim that Bruce Couturier "attempted to conduct th[e] Arbitration without notice to or joinder of
    Plaintiffs so that they could not assert their serious fraud and faithless servant claims." (Doc. # 496.)  Bruce

25  Couturier provided notice to the Company, however, and nothing in the arbitration agreement required him to also
    alert Plaintiffs, who purport to act as corporate representatives, of his demand for arbitration.  Had the disinterested

26  director of the Company wanted Plaintiffs to participate in the lawsuit, the Company could have requested their
    assistance eleven months ago, when Bruce Couturier first filed his arbitration demand.

27  [12]  Although Bruce Couturier cannot fathom why Plaintiffs would need to intervene, or should be allowed to
    intervene in the arbitration, if the court feels inclined to grant their request, Mr. Couturier respectfully requests that

28  the court limit the extent to which Plaintiffs can participate in those proceedings.  Mr. Couturier suggests that
    Plaintiffs be allowed to submit written briefing but not be allowed to participate at the hearing.

973930.3

20

DOWNEY BRAND LLP

1   preclusive effect, if any, an arbitration decision would have on Plaintiffs:

2           In the present case, the Plaintiffs did not sign the indemnification
            agreements, and they could not be bound by TEOHC when TEOHC
3           signed the agreements.  Plaintiffs obviously have not sought the
            benefit of the indemnification agreements.  In fact, they ask this
4           Court to invalidate them.  They therefore are not bound by the
            arbitration clause contained therein, and the arbitrator's decision
5           has no preclusive effect on them.

6   (Doc. # 367, Order at 16.)  Therefore, this court has already made clear that an arbitration

7   decision would not affect any right Plaintiffs may have to challenge an award to Bruce Couturier.

8           If the arbitration were allowed to proceed as planned, the arbitrator would simply

9   determine the contractual duties the Company owes to Bruce Couturier under the EEAs and ISOs,

10  and that determination would be binding on the Company but not on Plaintiffs with respect to

11  their ERISA claims.  (*See* Doc. # 367, Order at 15 (holding, in the context of a different request

12  for preliminary injunctive relief, that an arbitration order "would have preclusive effect as to the

13  [Company's] *contractual* duties under the indemnification agreement," but "does not and, in fact,

14  could not affect Plaintiffs' ERISA claims") (emphasis in original).)  In other words, if the

15  arbitration proceeded uninterrupted, the parties could resolve their contractual dispute regarding

16  which EEAs and ISOs are enforceable against the *Company*,[13] and the amounts owed by the

17  *Company* under one or more of these agreements (if anything), without affecting the rights of

18  Plaintiffs to seek damages from the Individual Defendants or Bruce Couturier.  Therefore,

19  plaintiffs would not be immediately, irreparably prejudiced if the arbitration proceeds as planned.

20  *See Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (stating that the harm must

21  be irreparable and immediate); *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir.

22  1992); *Midgett v. Tri-County Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 850-51 (9th Cir.

23  2001).  On the contrary, allowing the arbitration to proceed could only benefit Plaintiffs, as well

24  as the other parties to this action and the court, because the outcome of the arbitration could

25  completely eviscerate the need for Plaintiffs to seek injunctive relief, or at least allow the parties

26  to better focus their arguments on the issues actually decided.

27          Finally, Bruce Couturier notes that any harm to Plaintiffs can be adequately compensated

28  [13] Bruce Couturier and the Company dispute which specific EEAs and ISOs (2003, 2004, 2005) are enforceable.

973930.3
                                                    21

DOWNEY BRAND LLP

by damages, especially since all of the Individual Defendants are alleged to have significant

financial resources, and since the Court has already frozen the assets of at least one Defendant,

ensuring their availability after resolution of this action.  *See Goldie's Bookstore, Inc. v. Superior*

*Court*, 739 F.2d 466, 471 (9th Cir. 1984) (explaining that mere financial injury does not constitute

irreparable harm; if adequate compensatory relief could be available in the course of litigation,

there is no basis for awarding a preliminary injunction).

In sum, Plaintiffs cannot show an immediate, irreparable injury, that cannot be

compensated through legal damages.  Accordingly, the court should deny the motion.

**D.** **The Balance of the Hardships Favors Bruce Couturier**

The balance of the hardships strongly favors Bruce Couturier.  Unlike the allegations

against the Individual Defendants, Plaintiffs do not allege that Bruce Couturier pillaged and

plundered the company, walking away with millions in ill-gotten gains.  Rather, when Bruce

Couturier lost his job, he walked away with nothing in his pockets, except for the promise in his

EEAs to temporarily provide for him the event of his termination, and the retirement benefits in

his ISOs.  For the past eleven months, Bruce Couturier has been fighting with the Company to

collect these benefits: a $346,500 in severance package, the cost of health care coverage and the

value of stock options worth somewhere between $1 and $2 million, which represent and reflect

his twenty years of service to the Company.  He has fought this battle in arbitration, without the

benefit of his promised income, making that litigation financially difficult.

Plaintiffs and the Company know the longer they can delay arbitration, and thus the

payment of any benefits, the more difficult funding the arbitration becomes for Mr. Couturier.

For that reason, Plaintiffs have engaged in a war of attrition, culminating with their most recent

request for amendment of the pleadings and preliminary injunctive relief.  Plaintiffs know that if

the court grants their stay request, Bruce Couturier would be deprived of the income and benefits

under his EEAs and ISOs for an indeterminate period of time, further detrimentally affecting his

ability to adequately defend his interests.  If the court also were to join Mr. Couturier in this

action, he more than likely would have to bear the burden of his own defense expenses, since the

court has already indicated that his Indemnification Agreements might not be enforceable.

DOWNEY BRAND LLP

973930.3

22

1    Bruce Couturier has waited for arbitration long enough.  He has patiently waited through

2    numerous continuances and stays, requested first by the Company and later by Plaintiffs, even

3    though his EEAs provide for arbitration within sixty days.

4    Plaintiffs have waited too long to bring their belated Supplemental Complaint and request

5    for injunctive relief.  Plaintiffs should have asserted their affirmative claims against Bruce

6    Couturier three years ago, when they filed their original complaint.  Plaintiffs should have

7    requested injunctive relief eleven months ago, when Bruce Couturier made his arbitration

8    demand, or at the very latest, three months ago, when they supposedly first became aware of the

9    arbitration proceedings.  Plaintiffs cannot dispute that they have been aware of the arbitration

10    since September 2008, yet they took no action in this court to immediately bring claims against

11    Bruce Couturier, stay the arbitration or intervene.

12    Furthermore, if Plaintiffs were allowed to intervene in the arbitration, they would have the

13    benefit of three years worth of discovery in this federal action, while Bruce Couturier would have

14    none, since the parties have not and cannot engage in discovery in the arbitration proceedings.

15    Given this significant disadvantage, and the prejudice to Bruce Couturier if the court stayed the

16    proceedings, the balance of the hardships favors Mr. Couturier.

17    **E.**      **Plaintiffs Have No Right To Stay or Intervene in the Arbitration**

18    Plaintiffs have no right to request a stay of the arbitration or intervene in that process.

19    Under well-established California law, only a party to an arbitration agreement can request a stay

20    of arbitration or otherwise interfere in the arbitration process.  *See One World Networks*

21    *Integrated Technologies, Inc. v. Duitch* (2002) 103 Cal.App.4[th] 1038, 1044.  In *One World*, a

22    California Court of Appeal held that the stay of an arbitration may be invoked only through a

23    petition by "a party to an arbitration agreement."  *Id.* at 1044 (citing Cal. Code of Civil Procedure

24    § 1280) (explaining "no one other than a party to the arbitration agreement ought to be allowed to

25    interfere with the arbitration process").  Plaintiffs are not signatories to either the EEAs or ISOs.

26    (*See* Doc. # 483 at Ex. 2.)  Moreover, the agreements do not contain any provision allowing

27    Plaintiffs to intervene, and in fact, contain provisions implicitly prohibiting their participation in

28    / / /

DOWNEY BRAND LLP

OPPOSITION TO MOTION TO AMEND AND MOTION FOR INJUNCTIVE RELIEF

1   that proceeding.[14]  (*See id.* Ex. 2.)   Therefore, Plaintiffs have no right to stay the arbitration or

2   otherwise interfere in the proceedings by intervening.

3        Plaintiffs contend that this authority does not apply because Bruce Couturier seeks "plan

4   assets" in the arbitration, causing ERISA to preempt his claims.  (Doc. # 496 at 5.)  Bruce

5   Couturier does not seek ESOP assets through his arbitration with the Company.  Rather, he seeks

6   the executive compensation that he was promised from the Company (not its shareholder) in

7   exchange for his twenty year of service.  Furthermore, ERISA does not apply because Bruce

8   Couturier does not qualify as a "party of interest," his EEAs and ISOs do not constitute

9   "prohibited transactions," and his EEAs and ISOs do not involve "plan assets."  (*See* Part III.E.)

10  **F.    The Court Should Not Enjoin Payment of the Arbitrator's Prior Order on Bruce**
        **Couturier's Motion re: Payment Agreement**

11

12       When the Company requested another extension of the arbitration hearing, Bruce

13  Couturier agreed on the condition that the Company pay him the two years severance pay to

14  which he was undisputedly entitled, in the amount of $346,500.00.  (Seibert ¶ 6.)  The Company

15  agreed to this proposal, received a continuance, and then breached the agreement to pay.  (*Id.*)

16  Despite subsequent efforts by both the Company and Plaintiffs to halt payment, the arbitrator

17  ordered the Company to pay this $346,500.00 in accordance with the agreement.  (*Id.*)

18       Plaintiffs now ask this court to enjoin the Company from making any payments to Bruce

19  Couturier (including the $346,500.00) pending the disposition of this case.  Even if the court were

20  inclined to enjoin the Company from paying Bruce Couturier under his EEAs and ISOs under any

21  future arbitration award, the court should not enjoin payment of the $346,500.00, which the

22  company had promised to pay.  If the court were to enjoin payment of this amount, the Company

23  will have received the benefit of the bargain (by acquiring a stay of the arbitration from July until

24  December, despite the contractual requirement that arbitration be completed in sixty days), while

25  Mr. Couturier would not receive any return performance.  Enjoining payment would adversely

26

27  [14]  The arbitration agreement provides in relevant part:  "If any controversy or claim arising out of this Agreement
    cannot be settled by the Parties or through mediation, the controversy or claim shall be settled by arbitration."  The
28  agreement defines the "Parties" as the Company (THOC) and Bruce Couturier, and does not open the arbitration
    provision up to third parties, even when those parties purport to act in a representative capacity.

973930.3                                       24

1  affect his ability to fund his litigation in the arbitration and (potentially) his defense in this action.

2       The Company – through its disinterested chairman – undisputedly had the ability to bind

3  itself to the agreement with Mr. Couturier.  Mr. Couturier relied on this authority in entering into

4  the agreement.  If Plaintiffs did not believe that the Company had the ability to enter such

5  agreements, or that payment of any sums would be improper, Plaintiffs should have requested

6  appropriate relief from this court sooner.  Plaintiffs took no action.

7       In fact, Plaintiffs have taken no action with respect to payouts by the Company to other

8  executives, such as Mark Comfort and Dorothy McDaniel, despite the fact that these payments

9  were made since Plaintiffs filed this federal action.  In fact, Mr. Comfort settled his claim with the

10 Company under his EEAs and ISOs, receiving nearly $1 million in compensation.  Plaintiffs

11 never asserted that the Company could not or should not pay Mr. Comfort $1 million in Company

12 assets, even though the same individuals who signed his EEAs and ISOs also approved the EEAs

13 and ISOs to Bruce Couturier.  Accordingly, Plaintiffs should be estopped from claiming that the

14 Company should not pay Mr. Couturier the promised $346,500.00, which represents only a small

15 fraction of Company assets, but to Bruce Couturier, a significant sum.

16                            **V.    CONCLUSION**

17       For the forgoing reasons, Bruce Couturier respectfully requests that the Court deny the

18 Motion to Amend and the Motion for a Preliminary Injunction.

19

20 DATED:  December 23, 2008              DOWNEY BRAND LLP

21

22                                  By:  /s/ Meghan M. Baker
                                        MEGHAN M. BAKER
23                                     Attorney for non-party Bruce Couturier

24

25

26

27

28

DOWNEY BRAND LLP