DOWNEY BRAND LLP
KEVIN M. SEIBERT (Bar No. 119356)
ANTHONY L. VIGNOLO (Bar No. 203933)
ANNIE S. AMARAL (Bar No. 238189)
621 Capitol Mall, 18th Floor
Sacramento, CA  95814-4731
Telephone:     (916) 444-1000
Facsimile:      (916) 444-2100
kseibert@downeybrand.com
avignolo@downeybrand.com
aamaral@downeybrand.com

Attorneys for Applicant Intervenor
BRUCE COUTURIER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| GREGORY JOHNSON, et al.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CLAIR R. COUTURIER, JR., et al.,<br><br>　　　　Defendant.<br><hr>DARLEEN STANTON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CLAIR R. COUTURIER, JR., et al.,<br><br>　　　　Defendant. | Case No.  2:05-cv-02046 RRB GGH<br>(Lead Case-Consolidated)<br><br>**APPLICANT INTERVENOR BRUCE COUTURIER'S REPLY IN SUPPORT OF MOTION TO INTERVENE**<br><hr><br>Case No.  2:07-cv-01208-WBS-JFM<br><br>(Consolidated under 2:05-cv-02046 RRB GGH)<br><br>Case No.  2:08-cv-02732-RRB-GGH |

1057342.2

REPLY IN SUPPORT OF MOTION TO INTERVENE

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1
II. LEGAL ANALYSIS ............................................................................................................ 2
    A. Couturier's Role at the Fairness Hearing Will be Limited ..................................... 2
    B. Couturier's Motion to Intervene is Timely ............................................................. 2
    C. Couturier Owns a Vested Interest in TEOHC ........................................................ 4
        1. Couturier is Only Intervening to Confirm that Recovery Goes to the Proper Recipient, Which the Law Confirms is TEOHC .............................. 4
        2. TEOHC Has Prevented Couturier From Exercising His Shares ................. 5
    D. Miscellaneous Arguments Raised by Plaintiffs Are Not Dispositive ..................... 8
        1. TEOHC's Counsel is Not Adequate Representation for Couturier ............ 8
        2. Couturier's Purported Conflict of Interest is a Red Herring ....................... 8
        3. The Strike Price of Couturier's Shares is Irrelevant to the Motion ............. 8
        4. Couturier is Not Seeking Double Recovery ................................................ 8
        5. How the Settlement Funds are Characterized is not Dispositive ................ 9
    E. Miscellaneous Arguments Raised by the DOL Are Not Dispositive ...................... 9
        1. Couturier's Release and Other Litigation Are Not Relevant ...................... 9
        2. Couturier Is Not Seeking a Portion of the Government's Recovery ......... 10
        3. It is Not Couturier's Burden to Parse Out the Settlement Funds .............. 10
III. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*U.S. v. Alisal Water Corp.*,
 370 F.3d 915, 922 (9th Cir. 2004) .................................................................................... 3

*Waller v. Financial Corp. of America*,
 828 F.2d 579 (9th Cir. 1987) ............................................................................................ 5

### STATE CASES

*Bader v. Anderson*,
 179 Cal. App. 4th 775, 788-89 (2009) ............................................................................. 5

*Gamble v. Penn Valley Crude Oil Corp.*,
 104 A.2d 257, 260 (Del. Ch. 1954) .................................................................................. 7

*Levien v. Sinclair Oil Corp.*,
 C.A. No. 1883 (Del. Ch. Aug. 12, 1975) .......................................................................... 5

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
 845 A.2d 1031, 1036 (Del. 2004) ............................................................................... 5, 10

### FEDERAL RULES

Rule 801(d)(2) ............................................................................................................................ 6

### OTHER AUTHORITIES

FOLK ON THE DELAWARE GENERAL CORPORATION LAW (5th ed., §327.2.2) ................................. 5

## I. INTRODUCTION

Bruce Couturier's right to intervene is premised on the following simple facts: Plaintiffs and the DOL claim that Defendants abused **TEOHC** assets to the tune of $34 million dollars. Plaintiffs and the DOL claim that because the Defendants' actions harmed **TEOHC,** the ESOP was harmed by this alleged abuse. Plaintiffs and the DOL filed suit to recover **TEOHC's** assets. **Those assets belonged to TEOHC.** Thus, it only makes sense that any recovery – whether in the form of a judgment, or a settlement – should go back to TEOHC, and not to any one particular shareholder. Delaware and California law confirm that recovery in derivative claims goes to the corporation, yet none of the parties addressed this issue at the mediation, including TEOHC itself.

In fact, TEOHC has done everything possible to deprive Couturier of the value of his Incentive Stock Options, and the Settlement Agreement, which comes on the heels of a hard-fought, two-year arbitration dispute between TEOHC and Couturier, is another such attempt. In that dispute, the Arbitrator expressly determined that Couturier properly exercised 4,296.28 shares of TEOHC stock. Displeased with this ruling, TEOHC immediately looked for and found a way out of it: by giving away over half the assets of the Company and otherwise substantially diluting the value of Couturier's shares before Couturier could blink.

Couturier's Motion seeks to prevent this inequitable result. Plaintiffs, the DOL, and TEOHC have filed Oppositions,[1] all raising peripheral issues, including: Couturier's standing to bring a derivative claim, despite the fact that he is not seeking to bring one; how long Couturier has been aware of this litigation, despite the fact that his vested interest in TEOHC was confirmed only three months ago (shortly before the parties agreed to settle in a manner that would put Couturier's rightful portion of the settlement funds in Plaintiffs' hands); and the history of Couturier's dispute with TEOHC, which only underscores TEOHC's bias against Couturier. Although the Oppositions accuse Couturier of filing a frivolous motion, the irrelevant briefs submitted by the Opposing Parties are the real waste of judicial time.

Couturier is not seeking to join this action as an actively litigating party. He has a vested interest in the same assets that Plaintiffs and the DOL accuse his brother of misappropriating –

---

[1] Significantly, none of the Defendants filed Oppositions.

1057342.2                                                1

1  **TEOHC's** assets, and without leave to intervene, those assets will be distributed to one of
2  TEOHC's owners and to the exclusion of another, much like Plaintiffs claimed Defendants took
3  TEOHC's assets for their benefit and to the detriment of the ESOT.  Accordingly, Couturier urges
4  the Court to grant his Motion, consider his proposed Opposition, and disapprove the Settlement
5  Agreement because it is fundamentally unfair to him as a TEOHC shareholder.  Couturier does
6  not oppose the amount of the settlement;  he simply seeks to have the proceeds go to where they
7  legally belong: to TEOHC, and ultimately to those who have an ownership interest in TEOHC.

## II.   LEGAL ANALYSIS

### A.   Couturier's Role at the Fairness Hearing Will be Limited.

10  Plaintiffs begin by arguing that Couturier's Motion is a waste of judicial time because he
11  can object to the Settlement Agreement at the Fairness Hearing.  This argument conveniently fails
12  to point out that any objections Couturier makes at the Fairness Hearing will be limited to the
13  manner in which he is affected as a participant of the ESOP, not as a shareholder of TEOHC.  The
14  expressly stated purpose of the Fairness Hearing is for the Court to determine "[w]hether the
15  Settlement should be approved as fair, reasonable, and adequate to the Parties as well as to the
16  Affected Participants . . . ."  (*See* Docket Entry 751, Order at p. 3.)  "Affected Participants"
17  includes "all persons who were participants in the ESOP. . . ."  (*Id.* at p. 2.)  Plaintiffs are trying
18  to block Couturier now by arguing he can make these arguments later, and they will undoubtedly
19  respond at the Fairness Hearing by saying it is not the appropriate forum for a company
20  shareholder to object.  Indeed, they have indicated as much in their Opposition where they state:
21  "Like any of the other ESOP participants, [Couturier] is free to object to the terms of the
22  settlement and protect his interests in *connection with the distribution to ESOP participants*."
23  (Plfs' Opp at 16:16-18 (emphasis added).)  Couturier has a vested ownership interest in TEOHC,
24  and as such, he must have an opportunity to be heard in opposition to the approval of a Settlement
25  Agreement that deprives the Company of almost $15 million dollars.  This is that opportunity.

### B.   Couturier's Motion to Intervene is Timely.

27  All the Oppositions take the position that Couturier's Motion is untimely.  This argument
28  is based on two faulty premises: (1) that Couturier has known that in the Actions, it has been

1057342.2                                   2

REPLY IN SUPPORT OF MOTION TO INTERVENE

"undisputed" that the ESOP was the sole shareholder in TEOHC, such that Couturier should have contested this stance early on, and (2) that Couturier is seeking to intervene to make a claim against the Defendants in the same manner as Plaintiffs, and therefore has been privy to the allegations all along and could have joined the litigation years ago. These are both non-starters. The issue of who holds shares in TEOHC is not the trigger for the instant Motion. The trigger is who is receiving settlement funds as a result of Defendants' agreement to pay. Whether there is one shareholder or fifty shareholders, there was no need for Couturier to intervene until Plaintiffs revealed the Parties' intent to circumvent the entity that actually owned the assets in question.[2]

Secondly, Couturier has no interest in pursuing this action as a litigating plaintiff. Couturier made clear in his opening brief that he is seeking to intervene for the limited purpose of objecting to the Settlement Agreement in order to protect the TEOHC assets that Plaintiffs and the DOL claim were pilfered by Defendants. Given the narrow scope of Couturier's proposed intervention, the untimeliness argument is nonsensical because it means that Couturier should have known from the outset of this protracted litigation that the Parties were going to settle in a manner that would misdirect any recovery away from TEOHC and directly to the ESOP. But again, this fact was not made known to Couturier until Plaintiffs filed their Settlement Motion in early January. Thus, by the DOL's own authority, this Court need not be reluctant to permit intervention at this post-settlement stage because Couturier "had no means of knowing that the proposed settlement was contrary to [his] interests." (DOL's Opp'n at 8:17-18 (quoting *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir. 2004).)

Finally, Plaintiffs, the DOL, and TEOHC all claim they will be prejudiced if Couturier's Motion is granted, but any prejudice they may suffer (a point Couturier does not concede) is only a result of their own calculated efforts to bypass TEOHC and, consequently, Couturier. Couturier had no warning that the parties would direct any settlement funds directly to the ESOP. Thus, he had no reason to believe anything was awry until the Settlement Agreement was filed. That

---

[2] Indeed, it makes little sense to suggest that Couturier should have intervened as a TEOHC shareholder any sooner (*see* Plfs' Opp at 11:9-10) because (1) there are no other TEOHC shareholders prosecuting this action, and (2) Couturier's interest in TEOHC shares was a main issue in dispute in the Arbitration. Had Couturier tried to intervene sooner, everyone would have objected on the grounds that his vested interest was not yet confirmed.

1057342.2     3

REPLY IN SUPPORT OF MOTION TO INTERVENE

Agreement is severely prejudicial to Couturier, as it negates the effect of the Arbitration Award by deflecting a nearly $15 million dollar payment away from TEOHC's coffers and directly to the ESOP. In contrast, the ESOP will suffer no harm if the settlement funds go to TEOHC, which can distribute the settlement funds, like it can distribute its other assets, to the shareholders in due course. But if TEOHC distributes any of its assets to only one shareholder, the decision makers at TEOHC will be exposed to liability to the other person with ownership rights: Couturier. TEOHC and Plaintiffs want this Court to bless the distribution of the settlement proceeds directly to the ESOP in an attempt to avoid such potential liability. This Court should not allow TEOHC and Plaintiffs to use the Court to deprive another owner of his share of the TEOHC assets.

### C.  Couturier Owns a Vested Interest in TEOHC.

Plaintiffs, the DOL, and TEOHC make much ado about the fact that Couturier was not a shareholder during the time period in which the supposed bad acts occurred, and contend he still does not own any TEOHC shares outright. The first part of this argument again reflects a misunderstanding of Couturier's goals in intervening, and disregards that Couturier first received options in 2003 – well before the alleged bad acts occurred. Thus, Couturier had an interest well in advance of the time period in question. And importantly, the Executive Employment Agreement provided Couturier with five years to exercise those options. Indeed, the Arbitrator found that Couturier exercised his rights to buy the shares in June 2007. The second part of the argument disregards that Couturier has been **trying** to buy his shares for years; the only delay was caused by TEOHC's refusal to accept his tender. Thus, it is inequitable for TEOHC to argue Couturier is not a shareholder, when it is the sole source of this problem.

#### 1.  *Couturier is Only Intervening to Confirm that Recovery Goes to the Proper Recipient, Which the Law Confirms is TEOHC.*

Couturier is not attempting to file a derivative claim against any of the Defendants. He is seeking to intervene for the limited purpose of objecting to the Settlement Agreement. He does so as an individual with a present, vested ownership interest in TEOHC, as recently confirmed by the Arbitrator. More explicitly, he is asking to be treated as a shareholder for purposes of getting part of any money that should be going back to the corporation. TEOHC is the proper entity to

receive this money because it was Defendants' purported abuse of **TEOHC assets** that formed the allegations in the Johnson Action and Stanton Action – both of which raise derivative claims. (*See* Plfs' Opp at 14, explaining derivative nature of Plaintiffs' claims);[3] *see also Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004) ("Because a derivative suit is being brought on behalf of the corporation, the recovery, if any, must go to the corporation") *and Bader v. Anderson*, 179 Cal. App. 4th 775, 788-89 (2009) (explaining that "[w]here the directors of a corporation fail or refuse to act, a shareholder has a sufficient interest in the entity to justify the bringing of a 'propulsive action,' designed to set in motion the judicial machinery for the redress of the wrong to the corporation; the corporation is the ultimate beneficiary of such a derivative suit"). Couturier's status as a shareholder at the time of the wrongful acts is not an issue because he is not trying to bring a derivative claim; he is merely trying to ensure that he, as an individual with a vested interest in TEOHC at the time the money is paid, gets to share in that money based upon his vested right to shares of TEOHC stock.[4]  *See* FOLK ON THE DELAWARE GENERAL CORPORATION LAW (5th ed., §327.2.2) (citing *Levien v. Sinclair Oil Corp.*, C.A. No. 1883 (Del. Ch. Aug. 12, 1975) (concluding that the entire amount of recovery obtained in a derivative action must inure to the corporation and not to one stockholder, even where compelling reasons exist).[5]

### 2.   TEOHC Has Prevented Couturier From Exercising His Shares.

Plaintiffs, the DOL, and TEOHC also argue that Couturier cannot intervene because he is

---

[3]   Plaintiffs acknowledge they have derivative claims, but have offered no reason why their recovery should be directed away from TEOHC. In fact, they implicitly concede otherwise: "Recovery was sought for the ESOP **and for the benefit of the corporation** as of the time of the wrongdoing." (Plfs' Opp at 13:6-7 (emphasis added).)

[4]   Even if it was relevant, Couturier would have an equitable argument for being afforded shareholder status at the time of the wrongful conduct based on the first ISO he received in 2003, which entitled him to exercise those shares over a five year period. (*See Decl. of Kevin Seibert in Support of Reply* ("Seibert Reply Decl.") at ¶ 2, Ex. A.)

[5]   Plaintiffs also argue that because Couturier was not a TEOHC shareholder at the time of the acts in question, his lack of standing to bring a derivative claim also means he lacks standing to object to the Settlement Agreement. (Plfs' Opp at 18:3-12.) Plaintiffs' argument is premised on a factually distinguishable case and other, non-binding authority. The issue in *Waller v. Financial Corp. of America*, 828 F.2d 579 (9th Cir. 1987) was whether a non-settling defendant had standing to object to a settlement agreement for other defendants, which the moving party argued contained a term that prejudiced its separate case with the plaintiff. Derivative claims were not at issue, and the case is fundamentally off-point. Nor are the other, non-binding cases relied upon by Plaintiffs any more suggestive that this Court should ignore the inequities that will befall Couturier if he is not allowed to intervene and object to the Settlement Agreement.

not yet a shareholder.[6]  This is, perhaps, the most inequitable argument that could be made.  The only reason Couturier has not effectuated the purchase of his shares is because TEOHC has refused to honor Couturier's timely exercise of his ISOs.  Plaintiffs themselves point out that Couturier first exercised his shares in June 2007 by tendering $1.00 and providing a promissory note.  (*See* Plfs' Opp, Ex. 3.)  This method of payment was authorized in Couturier's ISO agreement.  (*See id*. at Ex. 2, p. 2 (ISO at § III).)  The only reason that Couturier has not yet received his shares is because TEOHC disputed his June 2007 exercise letter and, ever since, he and TEOHC have been engaged in heated litigation relating to the number of shares he is entitled to purchase under the ISO, and the strike price of those options.  Thus, Couturier did everything he could do to change his status from "option-holder" to "shareholder."  It was only in November that the arbitrator confirmed Couturier's entitlement, and even at this point the litigation between Couturier and TEOHC was not fully resolved.  Another round of briefing and another decision by the Arbitrator still followed.  Couturier did not tender cash for his shares immediately because there was the possibility that TEOHC was going to have to pay him more than the amount he would have to pay to exercise his options, so he delayed in the event the payout could operate as an offset.  In addition, the ISO and EEA allow him to enter into a promissory note for the purchase of the shares and to pledge the shares as security for the Note.

The inequities do not stop there.  TEOHC received over $20 million when it sold its assets in April 2007.  As referenced by Plaintiffs, in 2007, TEOHC made a $5 million dollar cash distribution of the sale proceeds to the ESOP as a TEOHC shareholder, and Couturier contends he is entitled to a pro rata share of that distribution.  TEOHC, predictably, disputes this position, and the issue was briefed for the Arbitrator.  The Arbitrator did not deny Couturier's claim, but ruled he did not have jurisdiction to consider it.  (*See* Plfs' Opp, Ex. 5.)  Additionally, TEOHC just recently made yet another $5 million dollar cash distribution.  (*Seibert Reply Decl. at ¶ 3*.  It is not coincidental that TEOHC is taking these actions – and rushing this Settlement Agreement

---

[6]   TEOHC challenges the expert witness testimony from the Arbitration that Couturier submitted.  TEOHC contends their expert witnesses' testimony lacks foundation and is inadmissible because it is hearsay.  It is not.  Couturier laid the proper foundation (*see* Seibert Decl. at ¶¶ 2, 5), and the testimony is an adoptive admission under Rule 801(d)(2) of the Federal Rules of Evidence.

through – before Couturier has a final decision via the Arbitration as to what he may be owed by TEOHC.[7] For example, Couturier will soon be filing his motion for a prevailing party determination and award of attorneys' fees and costs.

It is clear that TEOHC will do everything it can to prevent Couturier from reaping any benefit from his ownership interest in the Company. Given that the Arbitrator ruled that Couturier properly exercised his options and determined that the strike price was substantially lower than what TEOHC asserted, TEOHC prevented Couturier from purchasing the shares until the matter could be fully adjudicated through the Arbitration. TEOHC cannot prevent Couturier from buying the shares and then claim he is not a shareholder. But even if it finds Couturier is not currently a shareholder, the Court should still treat him as an equitable shareholder. Although holders of options to purchase stock are not normally treated as equitable shareholders, *see Gamble v. Penn Valley Crude Oil Corp.*, 104 A.2d 257, 260 (Del. Ch. 1954) (citation omitted), this is not a typical situation where an option-holder has simply waited to exercise. Couturier fully exercised his rights to purchase shares within two months of TEOHC selling its assets. Yet because of TEOHC's refusal to issue share certificates, Couturier has been deprived of the shares, while at the same time TEOHC has been busy distributing to the ESOP the proceeds of the sale while it litigates with Couturier over the number of shares he is entitled to and the amount he must pay for the shares. This pattern of preventing him from getting the shares and distributing TEOHC assets continues with this settlement, as TEOHC is now using Couturier's status to try and prevent him from recovering a share of the settlement funds that rightfully belong to TEOHC. It is undisputed that Couturier has a vested interest in 4,296.28 TEOHC shares. TEOHC's attempt to prevent Couturier from intervening because TEOHC has not accepted his payment for

---

[7] Nor is it accurate of TEOHC to suggest that Couturier has been waiting to decide whether to exercise his options until after the Actions settled. In the Arbitration Award, the Arbitrator requested further briefing on multiple issues, including whether Couturier had a right to be cashed out instead of holding the shares. (*Declaration of Kevin Seibert in Support of Motion to Intervene* ("Seibert Decl.") at ¶ 2, Ex. A, p. 29.) Couturier responded almost immediately, indicating he was going to keep the shares. As a result, by mid-November, any doubt about whether Couturier was keeping the shares was resolved. Settlement negotiations in the Actions continued well past this time (*see* DOL Opp at p. 2), so TEOHC, Plaintiffs, and the DOL all knew at the time of the settlement that Couturier had a vested right in the shares, which he intended to keep. Because TEOHC was aware at this point that Couturier was keeping the shares instead of being cashed out, it attempted to unwind the Arbitration Award and substantially dilute the value of Couturier's ISO shares by settling the Actions in a manner that would bypass any payment away from TEOHC and, consequently, Couturier.

those shares, and the Court should not ignore the harm it will cause if Couturier is penalized for TEOHC's purposeful interference with his right to hold the shares.

### D. Miscellaneous Arguments Raised by Plaintiffs Are Not Dispositive.

Plaintiffs raise miscellaneous arguments not included in the other Oppositions, none of which provide a reason for denying Couturier's Motion.

#### 1. TEOHC's Counsel is Not Adequate Representation for Couturier.

Plaintiffs argue that TEOHC's own counsel has been looking out for and protecting the interests of TEOHC throughout the course of the Actions. This gives Couturier little comfort, as he and TEOHC have been adverse to one another for years in separate litigation, and there is no love lost between the two. TEOHC has shown no intent to protect Couturier. Just the opposite is true. TEOHC authorized a second $5 million distribution of the sale proceeds recently and once again ignored Couturier's vested rights. TEOHC appears to be Plaintiffs' puppet. Thus, to suggest that TEOHC will not look for a way to undermine Couturier is disingenuous at best.

#### 2. Couturier's Purported Conflict of Interest is a Red Herring.

Plaintiffs also argue that Couturier is conflicted out of raising his concerns. This is a red herring. It is no more inappropriate for Couturier to object to the Settlement Agreement as a TEOHC shareholder than it is for him to object as an ESOP participant – a right Plaintiffs concede he has and can exercise at the Fairness Hearing.

#### 3. The Strike Price of Couturier's Shares is Irrelevant to the Motion.

Plaintiffs contend that Couturier has been unjustly enriched because the strike price the Arbitrator determined he must pay to exercise his 4,296.28 shares is based on an appraisal that was done at a time when TEOHC had experienced devaluation because of Defendants' purported bad acts. This argument is moot. The Arbitrator adjudicated the dispute about the strike price and number of shares. (*See* Seibert Decl. ¶ 2, Ex. A.)

#### 4. Couturier is Not Seeking Double Recovery.

Plaintiffs attempt to flip the tables and argue that Couturier is being inequitable by purportedly seeking double recovery by virtue of his vested ownership interest in TEOHC and because he is a 4% participant in the ESOP, which will give him a recovery that is, according to

Plaintiffs, "fair and adequate." (Plfs' Opp at 20:6.)  This is only fair from Plaintiffs' perspective because they are not being excluded from a share of nearly $15 million dollars.  The fact of the matter is, Couturier wears two hats for TEOHC: one as a plan participant, and one as an ISO shareholder.  Plaintiffs cite no authority for the proposition that these dual roles should prevent Couturier from recovering in one capacity or another.  Moreover, Couturier is willing to meet in the middle on this issue:  if Plaintiffs are concerned about delaying payout to the ESOP, Couturier is willing to have a pro rata share of the Settlement Funds equivalent to the pro rata interest he holds in TEOHC shares interpleaded by the Court pending resolution of this issue.

### 5. *How the Settlement Funds are Characterized is not Dispositive.*

Plaintiffs argue that the net settlement proceeds are not a dividend, but are rather a distribution pursuant to court order.  (Plfs' Opp at 20:9-14.)  They try to characterize this recovery as "plan assets," but as demonstrated at length above, any recovery in a derivative claim inures to the benefit of the corporation.  In addition, this is merely a change of tactic midstream because it serves Plaintiffs' purposes.  They have previously described the assets as "corporate assets" when it behooved them to do so.  Right now, in an effort to bypass TEOHC and, consequently, Couturier, it behooves them to refer to them as "plan assets," so they are.  But in any event, even if it is a "distribution," this does not answer they question why it should be made directly to the ESOP and not to the corporation.

### E. **Miscellaneous Arguments Raised by the DOL Are Not Dispositive.**

Like Plaintiffs, the DOL raises a handful of independent arguments in its Oppositions and, also like Plaintiffs, the DOL's additional arguments do not warrant denying the Motion.

### 1. *Couturier's Release and Other Litigation Are Not Relevant.*

The DOL argues that the Motion is precluded by a release Couturier signed in August 2005. (DOL Opp'n at 13:20-23.)  This argument also reflects a misapprehension of Couturier's goals. His Motion is not meant to challenge Defendants' conduct or prove they abused corporate assets, conduct which purportedly occurred before the date of the release.  Couturier's Motion arises out of the Settlement Agreement, which was memorialized in November and December 2009. As such, the release referred to by the DOL has no bearing on the issues in the Motion.

The DOL also references separate litigation Plaintiffs have commenced against Couturier, but provides no analysis regarding why this is relevant. (DOL Opp'n at 13:23-14:2.) It isn't.

### *2.    Couturier Is Not Seeking a Portion of the Government's Recovery.*

The DOL also argues that it is receiving a portion of the Settlement Funds and "[t]here is simply no support for Bruce Couturier's outlandish suggestion that he has any interest in any of the funds being paid to the United States Treasury in settlement of statutory penalty claims under ERISA." (DOL Opp'n at 14:11-13.) Couturier made no such suggestion. His sole concern is the return of TEOHC's assets to the Company. If Settlement Funds are being paid directly to the United States Treasury, so be it. Couturier does not contest this payment.

### *3.    It is Not Couturier's Burden to Parse Out the Settlement Funds.*

The DOL next argues that the Settlement Agreement deals with ERISA claims, and Couturier fails to demonstrate how he has any interest in the funds because "ERISA requires that plan assets be used solely in the interest of the participants and beneficiaries of plans . . . ." (DOL Opp'n at 14:17-18.) There are two problems with this argument. First, the Actions are all premised on Defendants' purported abuse of **TEOHC's** assets, not "plan assets." Which leads to the second problem, that the Settlement Agreement also settles Plaintiffs' derivative claims. Plaintiffs, the DOL, TEOHC, and Defendants are the ones who elected to settle for a lump sum; it is not Couturier's burden to parse out which portion of the settlement pertains to ERISA claims and which portion of the settlement pertains to derivative claims. It is undisputed that there are ERISA *and* derivative claims at issue. Where a derivative claim is resolved, the recovery goes to the corporation. *See Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d at 1036. As such, at least some portion of the Settlement Funds should be directed to TEOHC, not the ESOP.

### III.    CONCLUSION

This litigation is protracted, but Couturier's Motion is not as complicated as Plaintiffs, the DOL, and TEOHC want the Court to believe. The Motion is based on the simple reality that the Actions allege both ERISA and derivative claims. Any recovery for derivative claims belongs to the corporation. The Settlement Agreement does not direct the recovery to TEOHC; it directs it elsewhere. Couturier, by virtue of his vested interest in shares of TEOHC stock, has a direct

property interest in the Settlement Funds that is not being paid TEOHC, and he should be granted leave to intervene to object on the grounds that the Settlement Agreement is fundamentally unfair.

DATED:  February 12, 2010               DOWNEY BRAND LLP


                                        By:            /s/ Kevin Seibert
                                                     KEVIN SEIBERT
                                               Attorney for Applicant Intervenor
                                                       Bruce Couturier